Szaferman, Lakind, Blumstein & Blader, P.C.
101 Grovers Mill Road, Suite 200
Lawrenceville, N.J. 08648
(609) 275-0400

Levy Phillips & Konigsberg, LLP
101 Grovers Mill Road, Suite 200
Lawrenceville, N.J. 08648
(609) 720-0400

**Attorneys for Plaintiffs**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARY SUE PAPP and STEVEN PAPP,<br><br>  Plaintiffs,<br><br>v.<br><br>FORE-KAST SALES CO., INC., HONEYWELL INTERNATIONAL, INC., f/k/a Allied Signal, Inc. as successor-in-interest to The Bendix Corporation, NEW BRUNSWICK PLATING CO., f/k/a New Brunswick Nickel and Chrome Plating, UNION CARBIDE CORPORATION, JOHN DOE CORPORATIONS 1-50, JOHN DOE CORPORATIONS 51-100, GOODRICH CORP., f/k/a B.F. Goodrich Co., THE GOODYEAR TIRE AND RUBBER CO., and THE BOEING COMPANY, individually and as successor by merger to the McDonnell Douglas Corporation,<br><br>  Defendants. | Hon. Peter G. Sheridan, U.S.D.J.<br>Hon. Douglas E. Arpert, U.S.M.J.<br><br>Civil Action No.:<br>3:13-cv-05940-PGS-DEA<br><br>Transferred from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. MID-L-5186-13AS<br><br><br>  **Civil Action – Asbestos<br>    Litigation**<br><br>**Declaration of Jeffrey P. Blumstein in Support of Plaintiffs' Motion to Remand** |

  Pursuant to the provisions of 28 U.S.C. §1746, I, Jeffrey P. Blumstein, Esq., hereby declare and state the following:

877103.1

1.    I am an attorney-at-law of the State of New Jersey and a partner in the firm of Szaferman, Lakind, Blumstein & Blader, P.C., attorneys for Plaintiffs in the above-captioned matter.

2.    I am one of the attorneys responsible for handling the instant litigation.  As such, I have knowledge of the facts set forth below.

3.    Defendant Boeing Company, individually and as successor by merger to the McDonnell Douglas Corporation ("Boeing") never filed an Answer to Plaintiffs' First Amended Complaint in the Superior Court of New Jersey.

4.    Boeing never answered the Standard Interrogatories prescribed by the Asbestos Litigation General Order requested in Plaintiffs' First Amended Complaint.

5.    Attached hereto as Exhibit A is a true copy of Boeing's article about the history of the C-47 airplane.  This can be located online at http://www.boeing.com/boeing/history/mdc/skytrain.page.

6.    Attached hereto as Exhibit B is a true copy of the December 18, 2006 Decision of the Hon. Freda L. Wolfson, U.S.D.J. in the matter of THS Co., LLC v. Sheraton World Resort Orlando, 2006 WL 3731205 (D.N.J. 2006).

7.    Attached hereto as Exhibit C is a true copy of the October 22, 20108 decision of the Hon. Jan E. Dubois, U.S.D.J. in the matter of Santos v. Norfolk Southern Ry. Co., 2008 WL 4694558 (E.D. Pa. 2008).

877103.1                                  2

8.   Attached hereto as Exhibit D is a true copy of the September 22, 2006 Decision of the Hon. Stanley R. Chesler, U.S.D.J. in the matter of New Jersey Dept. of Environmental Protection v. Dixo Company, Inc., 2006 WL 2716092 (D.N.J. 2006).

9.   Attached hereto as Exhibit E is a true copy of the October 24, 2008 Decision of the Hon. Freda L. Wolfson, U.S.D.J. in the matter of Moore v. Turner Const. Co., 2008 WL 4723017 (D.N.J. 2008).

10.   Attached hereto as Exhibit "F" is a true copy of the August 7, 2012 Decision of the Hon. Freda L. Wolfson, U.S.D.J. in the matter of Lewis v. Asbestos Corp., Ltd., 2012 WL 3240941 (D.N.J. 2012).

11.   This Declaration is being submitted in support of the Plaintiffs' Motion for Remand.

Executed the _____18_____ day of October 2013 in the Township of Lawrence, County of Mercer, and State of New Jersey.

_____
Jeffrey P. Blumstein, Esq.

877103.1                                                  3

# Exhibit A

Merchandise | Corporate Governance | Employee/Retiree/Emergency Information | Ethics | Suppliers    **LOGIN**

Search

BA 107.04 (-0.46)

About Us    Products    Businesses/Services    Media    Investors    Careers    Global

Search History

About Us

 General Information

 Executive Biographies

 Advertising and Branding

 Boeing International

 Culture

 Diversity

 Education

 Environment

 Corporate Citizenship

 Government Operations

 Safety and Health at Work

 History

  Narrative

  Products

  Chronology

  Biographies

  Founders Videos

 Research Assistance

 Tours

## C-47 Skytrain Military Transport



The DC-3 did not go unnoticed by one of Douglas's oldest customers -- the U.S. Army.

The military career of the Douglas DC series began in 1936 when the Army Air Corps ordered a pair of DC-2s under the designation C-32. A contract followed for 18 DC-2s in the C-33 freighter configuration and two more as C-34 staff transports. Then, in 1937, the Army ordered a plane built to its own specifications. It was a hybrid design that combined the fuselage of the DC-2 with a DC-3 tail. This was the sole C-38 prototype and it led to 35 production versions called the C-39. The C-39 represented the first serious effort by the Army to establish an airlift capability.

By 1941 the old Air Corps had been transformed into the Army Air Forces, and it selected a modified version of the DC-3 -- the C-47 Skytrain -- to become its standard transport aircraft. A reinforced fuselage floor and the addition of a large cargo door were the only major modifications. Other changes included the fitting of cargo hooks beneath the center wing section and the removal of the tail cone to mount a hook for towing gliders.

As a supply plane, the C-47 could carry up to 6,000 pounds of cargo. It could also hold a fully assembled jeep or a 37 mm cannon. As a troop transport, it carried 28 soldiers in full combat gear. As a medical airlift plane, it could accommodate 14 stretcher patients and three nurses. Seven basic versions were built, and the aircraft was given at least 22 designations, including the AC-47D gunship, the EC-47 electronic reconnaissance aircraft, the EC-47Q antiaircraft systems evaluation aircraft and the C-53 Skytrooper.

Every branch of the U.S military and all the major allied powers flew it. The U.S. Navy version was the R4D. The British and the Australians designated it the Dakota (a clever acronym composed of the letters DACoTA for Douglas Aircraft Company Transport Aircraft). The aircraft operated from every continent in the world and participated in every major battle. By the end of World War II, more than 10,000 had been built. For all of its official and unofficial names, it came to be known universally as the &quot;Gooney Bird.&quot; General Dwight D. Eisenhower, Supreme Commander of Allied Forces in Europe, termed it one of the most vital pieces of military equipment used in winning the war.

C-47s remained in active military service long after the end of World War II. They played a critical role in the 1948 Berlin Airlift and saw action in the Korean and Vietnam wars.

### Specifications

| | |
|---|---|
| First flight: | Dec. 23, 1941 |
| Model Number: | C-47/R4D |
| Wingspan: | 95 feet 6 inches |
| Length: | 63 feet 9 inches |
| Height: | 17 feet |
| Service ceiling: | 24,000 feet |
| Normal range: | 1,600 miles |
| Maximum range: | 3,800 miles |
| Weight: | 31,000 pounds |
| Cruise speed: | 160 mph |
| Power plant: | Two 1,200 horsepower Pratt & Whitney R-1830 radial engines |
| Accommodation: | Three crew and 6,000 pounds of cargo, or 28 airborne troops, or 14 stretcher patients and three attendants |

Boeing International | Diversity | Corporate Citizenship | Environment | Government Operations | Videos | Images

Copyright © 1995 - 2013 Boeing. All Rights Reserved. Site Terms | Privacy & Cookie Policy | Contact Us | FAQ



# Exhibit B

Westlaw Delivery Summary Report for DODGE,ANDREW D

| | |
|---|---|
| Date/Time of Request: | Friday, October 11, 2013 10:53 Eastern |
| Client Identifier: | 76797.1 |
| Database: | DCT |
| Citation Text: | Not Reported in F.Supp.2d |
| Lines: | 120 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson Reuters, West and their affiliates.

Westlaw

Not Reported in F.Supp.2d, 2006 WL 3731205 (D.N.J.)
**(Cite as: 2006 WL 3731205 (D.N.J.))**

**C**
Only the Westlaw citation is currently available.

United States District Court,
D. New Jersey.
THS COMPANY, LLC, Plaintiff,
v.
SHERATON WORLD RESORT ORLANDO, et al, Defendants.

Civil Action No. 06-4956(FLW).
Dec. 18, 2006.

Victoria R. Pekerman, Shapiro & Croland, PC, Hackensack, NJ, for Plaintiff.

Vincent D. Paragano, Paragano & Richlan, PC, Attorney at Law, Bernardsville, NJ, for Defendants.

**OPINION**

WOLFSON, District Judge.

**\*1** Presently before the Court is a Motion to Remand by Plaintiff, THS Company, LLC, ("THS"), and a Motion to Transfer to the U.S. District Court for the Middle District of Florida by Defendants, Sheraton World Resort Orlando ("Sheraton") and Remington Hotel Corporation ("Remington"). For the reasons set forth below, Plaintiff's Motion will be granted and Defendant's Motion will be denied.

## I. Background

Plaintiff, THS, is a New Jersey Corporation that provides meeting, convention and housing services for amateur sports teams. On October 4, 2005, Plaintiff entered into an agreement with Defendants for a large block booking of hotel rooms at the Sheraton Orlando for "Spirit Team America Open" one of Plaintiff's long-standing customers. In addition, on October 7, 2005, THS entered into a Letter of Agreement with Sheraton, which, to the extent that Plaintiff utilized Defendants' hotels to accommodate its clients, governed the parties' relationship.

However, in a Complaint dated August 25, 2006, Plaintiff alleges that the services provided to Plaintiff and its customers pursuant to the Agreements were inadequate, substandard and deficient; indeed, Plaintiff contends that Defendants made material misrepresentations regarding the nature and quality of services and accommodations that would be provided to Plaintiff and its customers in order to induce Plaintiff into entering the above agreements. Moreover, Plaintiff alleges that Defendants misappropriated commissions and rebates that it was obligated to pay the Plaintiffs by accepting reservations directly from Plaintiff's customers in breach of the contract between the parties. Thus, Plaintiff filed a Complaint in the Superior Court of New Jersey, Law Division, on August 25, 2006 seeking damages for breach of contract, breach of the implied covenenat of good faith and fair dealing, tortious interference with economic advantage, fraud and violation of the New Jersey Consumer Fraud Act. Defendant Remington was served with the summons and Complaint on September 7, 2006 and Sheraton was served on September 12, 2006. Thereafter, on October 16, 2006 Defendants filed an Application for Removal to the United States District Court for the District of New Jersey. Subsequently, on October 30, 2006, Plaintiff filed a Motion to Remand the Action to State Court and on November 14, 2006, Defendants filed a Motion to Transfer the Case to the Middle District of Florida.

## II. Discussion

*1. Removal Under 28 U.S.C. § 1446*

Under the general federal removal statutes, an action brought in state court can be removed by defendants to the federal district court encompassing the state court if that federal district court would have had original jurisdiction. 28 U.S.C. § 1441(a). Section 1441 provides that "[e]xcept as otherwise expressly provided by Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

*2 Thus, to properly remove a case from state to federal court pursuant to section 1446(a), a defendant must file "a notice of removal ... containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served." 28 U.S.C. § 1446(a). The party seeking removal bears the burden of establishing that the notice of removal was filed in a timely manner. *Rosebud Holding LLC v. Burks,* 995 F.Supp. 465, 467 (D.N.J 1998). Section 1446 provides a thirty day limitations period for removal, 28 U.S.C. § 1446(b), and it is well-established that the thirty day period for removal is mandatory and cannot be extended by the court. *Balestrieri v. Bell Asbestos Mines, Ltd.,* 544 F.Supp. 528, 529 (E.D.Pa.1982); *Typh, Inc. v. Typhoon Fence of Penn., Inc.,* 461 F.Supp. 994, 996 (E.D.Pa.1978); *Northern Ill. Gas Co. v. Airco Indus. Gases Div. of Airco Inc.,* 676 F.2d 270, 273 (7th Cir.1982); *Courtney v. Benedetto,* 627 F.Supp. 523 (M.D.La.1986). Indeed, courts are required to construe removal statutes strictly and resolve all doubts in favor of remand. *Shamrock Oil & Gas Corp., v. Sheets,* 313 U.S. 100 (1941); *Yorker v. Manalapan Police Dept.,* 2005 WL 1429879 (D.N.J. June 17, 2005). A case may be remanded to state court on the ground of a defect in the removal procedure, 28 U.S.C. § 1447(c), including a failure to file a notice of removal within the thirty day limitations period. *Foster v. Chesapeake Ins. Co.,*

*Ltd.*, 933 F.2d 1207, 1212-14 (3d Cir.1991); *Capone v. Harris Corp.*, 694 F .Supp. 111, 112 (E.D.Pa.1988)("The thirty day period is mandatory and cannot be extended by the Court."); *Blow v. Liberty Travel, Inc.*, 550 F.Supp. 375, 375-76 (E.D.Pa.1982).

In the instant matter, Plaintiff filed a Complaint in the Superior Court of New Jersey, Law Division, on August 25, 2006. On September 7, 2006, Plaintiff served Remington and on September 12, 2006 Plaintiff served Sheraton. Thus, Defendants would have had, at the latest, until October 12, 2006 to timely file for removal pursuant to 28 U.S.C. § 1446. However, Defendants did not remove this case until October 16, 2006. Thus, Defendants' removal of this action is not timely.

Defendants, however, argue that the parties entered into a stipulation that extended the time to answer the Complaint or otherwise move until October 25, 2006, thus, Defendants contend that their removal was timely. The Court does not agree. Indeed, it is well-established that, "[w]here the right of removal has been lost by failure to file a petition within the statutory period, it cannot be restored by order of the court or by stipulation of the parties. The statutory period is an inflexible rule of law determining the time within which an application to remove must be made, and the court has no discretionary power to enlarge this period." *Peter Holding Co. v. LeRoy Foods, Inc.*, 107 F.Supp. 56, 57-68 (D.N.J.1952); *see also Brewer v. Geisinger Clinic, Inc.*, 2002 WL 57259 (M.D.Pa.2002). Thus, I find that Defendant's removal was not timely and I remand this case to the state court for further proceedings. Moreover, because removal in this matter is untimely and this action is not properly before me, Defendants' Motion to Transfer is moot and this Court need not consider whether this case should be transferred to the District of Florida pursuant to 28 U.S.C. § 1404(a).

## IV. Conclusion

*3 For the reasons set forth above, Plaintiff's Motion to Remand is granted and Defendants' Motion to Transfer is Denied. An appropriate order will follow.

D.N.J.,2006.
THS Co., LLC v. Sheraton World Resort Orlando
Not Reported in F.Supp.2d, 2006 WL 3731205 (D.N.J.)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

# Exhibit C

http://web2.westlaw.com/print/printstream.aspx?rs=WLW13.07&desti...

**Westlaw Delivery Summary Report for DODGE,ANDREW D**

| | |
|---|---|
| Date/Time of Request: | Friday, October 11, 2013 11:22 Eastern |
| Client Identifier: | 76797.1 |
| Database: | DCT |
| Citation Text: | Not Reported in F.Supp.2d |
| Lines: | 354 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson Reuters, West and their affiliates.

Westlaw.

Not Reported in F.Supp.2d, 2008 WL 4694558 (E.D.Pa.)
**(Cite as: 2008 WL 4694558 (E.D.Pa.))**

▷

Only the Westlaw citation is currently available.

United States District Court,
E.D. Pennsylvania.
Curt and Rosanne SANTOS, Plaintiffs,
v.
NORFOLK SOUTHERN RAILWAY COMPANY, Defendant.

Civil Action No. 08-4521.
Oct. 22, 2008.

Gregory A. Smith, McEldrew & Fullam PC, Philadelphia, PA, for Plaintiffs.

Raymond J. Hunter, Paul F.X. Gallagher, Gallagher Rowan PC, Philadelphia, PA, for Defendant.

***ORDER & MEMORANDUM***

JAN E. DuBOIS, District Judge.

***ORDER***

**\*1 AND NOW,** this 21st day of October, 2008, upon consideration of the Motion of Plaintiffs to Remand the Above-Captioned Case to the Court of Common Pleas of Philadelphia County, Pennsylvania (Document No. 10, filed October 2, 2008); Defendant Norfolk Southern Railway Company's Answer to Plaintiffs' Motion to Remand (Document No. 11, filed October 7, 2008); the Motion of Plaintiffs Curt and Rosanne Santos for Leave to File a Supplemental Brief in Support of the Motion to Remand (Document No. 12, filed October 14, 2008); and Defendant Norfolk Southern Railway Company's

Answer to Plaintiffs' Motion for Leave to File a Supplemental Brief in Support of Plaintiffs' Motion to Remand (Document No. 13, filed October 14, 2008), for the reasons set forth in the attached Memorandum, **IT IS ORDERED** that the Motion of Plaintiffs to Remand the Above-Captioned Case to the Court of Common Pleas of Philadelphia County, Pennsylvania is **GRANTED** and the case is **REMANDED** to the Court of Common Pleas of Philadelphia County.

**IT IS FURTHER ORDERED** as follows:

1. The Motion of Plaintiffs Curt and Rosanne Santos for Leave to File a Supplemental Brief in Support of the Motion to Remand is **GRANTED;**

2. The Preliminary Pretrial Conference scheduled for November 4, 2008, is **CANCELLED.**

## *MEMORANDUM*

### I. INTRODUCTION

On October 22, 2007, plaintiffs Curt and Rosanne Santos filed a Complaint against defendants Norfolk Southern Railway Company ("Norfolk Southern") and Consolidated Rail Corporation ("Conrail") in the Court of Common Pleas of Philadelphia County. Plaintiffs seek money damages for personal injuries, emotional distress, and loss of society resulting from Curt Santos's fall from a railroad bridge owned by defendant Norfolk Southern Railway Company. Plaintiffs allege that defendants' negligence in, *inter alia,* failing to maintain the bridge and post appropriate warnings caused the accident.

On September 15, 2008, plaintiffs' counsel agreed to dismiss the claims against Conrail. The following day, defendant Norfolk Southern filed a Notice of Removal in this Court.

Presently before the Court is the Motion of Plaintiffs to Remand the Above-Captioned Case to the Court of Common Pleas of Philadelphia County, Pennsylvania ("Motion to Remand"). Plaintiffs contend that defendant's Notice of Removal was untimely because Norfolk Southern had knowledge that allowed it to ascertain as of the filing of the Complaint that the other named defendant, Conrail, a non-diverse party, was not liable to plaintiffs, and that, as a consequence, Norfolk Southern was required to file a notice of removal based on fraudulent joinder within thirty days of receiving the Complaint or waive its right to remove. Defendant Norfolk Southern counters that the case was not removable based on the face of the Complaint, thus the thirty-day period did not commence until it received plaintiffs' stipulation dismissing Conrail. For the reasons set forth below, Plaintiffs' Motion to Remand is granted and the case is remanded to the Court of Common Pleas of Philadelphia County.

### II. BACKGROUND

*2 On July 7, 2007, plaintiff Curt Santos climbed onto a railway bridge spanning the Delaware River between Portland, Pennsylvania and Delaware, New Jersey, intending to jump into the Delaware River. (Compl.¶¶ 8, 16.) Plaintiffs allege that as Curt Santos was climbing to the top of the bridge, a piece of the bridge fell off, causing him to lose his grip on the bridge and fall, striking his head, back, arm, and side against the bridge and the concrete support structure. (*Id.* ¶¶ 19-20.) Curt Santos lost consciousness and fell into the Delaware River and was rescued by Rosanne Santos and another individual. (*Id.* ¶¶ 21-23.) Plaintiffs allege that the accident resulted from, *inter alia,* defendants' failure to maintain the bridge properly and post adequate warning signs, despite knowing that people regularly used the bridge for recreational purposes. (*Id.* ¶¶ 10-14, 28-32).

With respect to damages, plaintiffs allege that Curt Santos suffered serious physical injuries, some of which may be permanent; was forced to undergo surgery and other treatment; and lost earnings and the ability to engage in his usual activities. (*Id.* ¶¶ 35-39.) In addition, plaintiffs allege that Rosanne Santos suffered emotional distress from witnessing the accident and jumping into the river to save her husband from drowning and has been and will be deprived of the society of her spouse. (*Id.* ¶¶ 43-46.) On October 22, 2007, plaintiffs filed a Complaint in the Court of Common Pleas of Philadelphia County seeking in excess of $150,000 in damages. (*Id.* ¶¶ 39, 44, 46.)

On November 13, 2007, twenty-one days after the filing of the Complaint, defendants filed an Answer in which they asserted that defendant "Norfolk Southern is and was the sole owner and possessor of the bridge and that it was solely responsible for the maintenance, control, inspection, and repair of the bridge ...." (Answer ¶ 8.) Defendants "specifically denied that Conrail owned, possessed, controlled, repaired, maintained, inspected or had any authority over, in contract or law, the bridge ...." (*Id.*) As a result, defendants argued that "Conrail owed Plaintiff no legal duty under Pennsylvania law." (*Id.* ¶ 34.) In the November 13, 2007 cover letter sent to plaintiffs accompanying defendants' answer, defendants reiterated that "Conrail did not and does not own or possess the bridge and it plays absolutely no part in repairing, maintaining, or inspecting the bridge." (Pls.' Mot. to Remand, Ex. B.) Defendants requested that plaintiffs "sign the enclosed stipulation to dismiss all claims against Conrail ...." (*Id.*)

Plaintiffs' counsel requested discovery on the question of the ownership of the bridge. (Pls.' Mot. to Remand ¶ 14.) This discovery revealed that Conrail had sold its ownership interest in the bridge to a third party in 1999, who transferred it to Norfolk Southern in 2004. (*Id.*)

On May 14, 2008, defense counsel filed a Motion for Summary Judgment seeking dismissal of the claims against Conrail with prejudice on the grounds that Conrail did not possess the bridge at the time of the accident and thus was not liable to plaintiffs. (*Id.* ¶ 17.) On August 13, 2008, defense counsel sent a letter to the Honorable William J. Manfredi of the Court of Common Pleas of Philadelphia County requesting a conference to resolve, *inter alia,* the question of Conrail's liability to plaintiffs. (*Id.* ¶ 16.) Defense counsel wrote that he had "communicated to Plaintiffs' counsel *ad nauseum* that Conrail has not owned nor had any contact or dealings with the bridge since Conrail sold such property *in May of 1999-more than 8 years prior to the accident."* (Pls.' Mot. to Remand, Ex. D, at 2 (emphasis in the original).) Defense counsel contended that "Plaintiffs' counsel has repeatedly refused to voluntarily dismiss Conrail from the case. It has become evident that Plaintiffs' counsel is intent on keeping Conrail in the case solely for the purpose of preventing Norfolk Southern from removing the case on diversity jurisdiction grounds." (*Id.* at 4.)

**\*3** On September 15, 2008, the parties stipulated that all claims against Conrail were dismissed. (Pls.' Mot. to Remand ¶ 18.) On September 16, 2008, defendant Norfolk Southern filed a Notice of Removal in this Court on the basis that, after the dismissal of Conrail, complete diversity between the parties existed. (Notice of Removal ¶¶ 5-7 (Doc. No. 1, filed Sept. 16, 2008).)

### III. LEGAL STANDARD

In a motion to remand, "the removal statute should be strictly construed and all doubts should be resolved in favor of remand." *Abels v. State Farm Fire & Casualty Co.,* 770 F.2d 26, 29 (3d Cir.1985). "The party seeking removal has the burden of showing that federal subject-matter jurisdiction exists, that filing of the notice of removal was timely, and that removal is proper." *Mountain Ridge State Bank v. Investor Funding Corp.,* 763 F.Supp. 1282, 1288 (D.N.J.1991) (superseded by statute on other grounds) A case may be remanded to state court on the ground of a defect in the removal procedure. 28 U.S.C. §

1447(c). Failure to file a notice of removal within the thirty-day limitations period of 28 U.S.C. § 1446(b) is cause for remand. *Capone v. Harris Corp.,* 694 F.Supp. 111, 112 (E.D.Pa.1988); *Blow v. Liberty Travel, Inc. .,* 550 F.Supp. 375, 375-76 (E.D.Pa.1982).

## IV. DISCUSSION

### A. The Removal Process and Fraudulent Joinder

Under the general federal removal statutes, an action brought in state court may be removed by the defendant to the federal district court encompassing the state court if that federal district court would have had original jurisdiction over the action. *See* 28 U.S.C. § 1441(a). A defendant may seek to remove a case filed in state court if the requirements of federal diversity jurisdiction-complete diversity among the parties and the amount in controversy-are met. Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 3d § 3723, at 559 (3d ed.1998). Section 1441 imposes an additional requirement: actions "shall be removable [on the grounds of diversity] only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b).

Plaintiffs may seek to prevent removal through the joinder of defendants who share plaintiffs' citizenship or who are citizens of the forum state. *See* Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 3d § 3641, at 152. Even if plaintiff has joined such a non-diverse defendant, defendants may seek removal on the ground that the non-diverse defendant was fraudulently joined to defeat diversity. The removing party "has the burden of showing the district court that the joinder of the diversity destroying party was made without a reasonable basis of establishing any liability against that party and was undertaken solely to defeat the federal court's removal jurisdiction." *Id.* at 175.

In the Third Circuit, joinder of a non-diverse defendant is fraudulent when " 'there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment.' " *Abels v. State Farm Fire & Casualty Co.,* 770 F.2d 26, 32 (3d Cir.1985) (citing *Goldberg v. CPC Int'l,* 495 F.Supp. 233, 239 (N.D.Cal.1980)).

**\*4** Laying out its approach to the fraudulent joinder inquiry, in *In re Briscoe,* 448 F.3d 201, 217 (3d Cir.2006), the Third Circuit reviewed the "three decisions of this court in which we have developed our fraudulent joinder jurisprudence: *Batoff v. State Farm Insurance Company,* 977 F.2d 848 (3d Cir.1990); *Boyer v. Snap-On Tools Corporation,* 913 F.2d 108 (3d Cir.1990); and *Abels,* 770 F.2d 26.*"* The court held that in a fraudulent joinder inquiry, a district court may "pierce the pleadings" or "look to more than just the pleading allegations to identify indicia of fraudulent joinder." *In re Briscoe,* 448 F.3d at 218-19. Turning to policy, the court concluded that judgment "counsels against confining a district court strictly to the pleading allegations when it assesses a fraudulent joinder ... question." *Id.*

### B. The Commencement of the Thirty-Day Removal Period

Section 1446(b)'s "thirty-day period begins to run when a defendant can reasonably and intelligently conclude" that a case is removable. *Carroll v. United Airlines, Inc.,* 7 F.Supp.2d 516, 521 (D.N.J.1998). In other words, when a defendant can "ascertain" that a case can be removed to federal court, the thirty-day removal period commences. *Id.; see also Holloway v. Morrow,* No. 07-0839, 2008 WL 401305, at \*3 (S.D.Ala. Feb.11, 2008) (beginning to count "as soon as a defendant is able to ascertain intelligently that the action is removable"); *Naef v. Masonite Corp.,* 923 F.Supp. 1504, 1511-12 (S.D.Ala.1996) ("[T]he Court must determine at what point Defendants could have intelligently ascertained that the action was removable

through reasonable scrutiny of the pleadings and facts of the action as it developed in state court."). This may take place either with the filing of the complaint or after some later occurrence in the case, such as a deposition or other discovery response.

The defendant may be able to ascertain that a case is removable solely from the face of the complaint, or the defendant may be able to so determine after reading the complaint in light of defendant's independent knowledge. Defendant Norfolk Southern argues that defendants should not be charged with their independent knowledge; if a defendant cannot intelligently conclude that a case is removable from the face of the complaint, the thirty-day removal period should not begin until the first external event making the case removable-here, plaintiffs' written stipulation dismissing Conrail from the case. (Def.'s Resp. 2.) Plaintiffs counter that the Court should hold defendants responsible for their independent knowledge and begin counting the thirty-day period as of the receipt of the Complaint, at which time defendants could, based on the Complaint and their independent knowledge, determine that Conrail was fraudulently joined. (Pls.' Mot. to Remand ¶¶ 42-47.) Given the clear evidence that defendant Norfolk Southern knew that Conrail was fraudulently joined within thirty days of receiving the Complaint, the Court agrees with plaintiffs on this issue.

**\*5** Other district courts have held that, in determining when the period for filing a notice of removal commences, the court must look beyond the face of the complaint and consider a defendant's independent knowledge to assess when the defendant could have intelligently ascertained that the case was removable. *See, e.g., Iulianelli v. Lionel, L.L.C.,* 183 F.Supp.2d 962, 968 (E.D.Mich.2002) ("[T]his aspect of § 1446(b) ... could be construed in light of information beyond the four corners of the complaint that is known or readily available to the parties. This latter construction, in the Court's view, better serves the objective of prompt determination of a forum, without in any way jeopardizing the defendant's full and fair 30-day opportunity to decide whether to seek removal."). In *Iulianelli* the court analyzed both the complaint and defendant's independent knowledge at the time of service. 183 F.Supp.2d at 967-68. The court held that defendant's notice of removal was untimely because "[l]ong before this case was removed, and perhaps even at its inception, Defendant and its counsel were aware that Plaintiff had misidentified Lionel Trains as his employer, and that Lionel, L.L.C. [a diverse defendant] was the proper party." *Id.* at 968.

In *Delaney v. Viking Freight, Inc.,* 41 F.Supp.2d 672, 677 (E.D.Tex.1999), the court reached a similar conclusion, expressly rejecting defendants' argument that only plaintiffs' voluntary acts and not defendants' subjective knowledge could trigger removal. "Because [defendants] were able to detect the fraudulent joinder without any additional information supplied by Plaintiffs, it is evident that removability was first ascertainable when Defendants received Plaintiffs' state-court complaint. Consequently, the 30-day removal period commenced at that time." *Id.* The court also distinguished a Fifth Circuit case, *S.W.S. Erectors, Inc. v. Infax, Inc.,* 72 F.3d 489, 494 (5th Cir.1996), which held that "an affidavit created by the defendant and based on the defendant's subjective knowledge cannot convert a non-removable action into a removable one." The *Delaney* court held that the principle of *S.W.S. Erectors* does not "appl[y] in the fraudulent joinder context. In cases involving fraudulent joinder, the removing party frequently-if not usually-has to rely on subjective knowledge to some degree to ascertain the existence of a fraudulently joined party." 41 F.Supp.2d at 677.

In *Deming v. Nationwide Mutual Insurance Company,* No. 03-1225, 2004 WL 332741, at \*5 (D.Conn. Feb.14, 2004), the court found the notice of removal untimely because defendant waited until the state court granted the motion to strike the non-diverse parties. The defendant in *Deming* made an argument similar to that asserted by Norfolk Southern in its response-that the case became removable in diversity following the action of the state court. *Id.* at \* 1. The *Deming* court found this argument unavailing: "[Defendant] has not indicated that it learned any new facts from which it could ascertain that the claims against the non-diverse defendants had 'no possibility' of success on the merits between the time that plaintiff filed her complaint and the time that the Superior Court ruled on the motion to strike other than the ruling on the motion to

strike itself." *Id.* at *6. Analyzing the policy implications of defendant's argument, the court concluded that "[p]ermitting such 'fraudulent joinder by hindsight' removal petitions would serve ... to undermine 28 U.S.C. § 1446(b)'s thirty-day limit ...."

*6 Notwithstanding these decisions, defendant Norfolk Southern argues that its Notice of Removal was timely because the Notice, when filed, was not based on fraudulent joinder. (Def.'s Resp. 5-6). Defendant contends that its "beliefs concerning the validity of Plaintiffs' former claims against Conrail, a former party, [as evidenced in its Answer and its correspondence,] are irrelevant to the disposition of the instant motion." (*Id.* at 6.) Despite its earlier contentions that Conrail had been fraudulently joined, it was not required to file a Notice of Removal based on fraudulent joinder at that time and could wait until plaintiffs' agreement to dismiss Conrail to file a Notice of Removal on diversity jurisdiction grounds. (*Id.*)

In essence, defendant is arguing that there is a difference between its independent knowledge, which allowed it to "ascertain" that the case was removable at the filing of the Complaint, and information that it learned from plaintiffs, but drawing such a distinction elevates form over substance. If a defendant must file a notice of removal as soon the removability of the case can be intelligently ascertained, see *Carroll v. United Airlines, Inc.,* 7 F.Supp.2d at 521, the source of knowledge on which defendant makes such an assessment should be irrelevant.

Norfolk Southern knew at the time that the Complaint was filed that plaintiffs could not make out a claim against Conrail because Conrail did not own the bridge at the time of the accident. (*See* Answer ¶ 8.) Nearly eleven months later, when Norfolk Southern filed its Notice of Removal, it possessed no additional knowledge save that the plaintiffs had stipulated to a dismissal of Conrail from the case. The facts that convinced plaintiffs to enter into such a stipulation came from defendant and were in defendant's possession at the time that the Complaint was filed. As the *Delaney* court noted, the information establishing that a party has been fraudulently joined is often defendant's "subjective knowledge." 41 F.Supp.2d at 677.

Moreover, Norfolk Southern admits that it "has contended since the outset of the case that Conrail was fraudulently joined." (Def.'s Resp. to Mot. for Leave to File 2.) Norfolk Southern argues that the case hinges on the fact that its notice of removal is based on diversity jurisdiction after the non-diverse (arguably fraudulently joined) defendant was dismissed by plaintiffs, not on fraudulent joinder *per se.* (*Id.*) This distinction misses the point-if Norfolk Southern *could have* filed a notice of removal based on fraudulent joinder earlier, as it agrees that it could, it was *required* to do so or waive the right to remove.

The scope of the district court's inquiry in the fraudulent joinder context also informs the disposition of the instant motion. When a defendant files a notice of removal based on fraudulent joinder, a district court may go beyond the pleadings in deciding a motion to remand. *See In re Briscoe,* 448 F.3d at 218-19. Likewise, the court can conduct an inquiry to determine when the defendant possessed the requisite knowledge to file a notice of removal based on fraudulent joinder.

*7 In this case, had Norfolk Southern filed a notice of removal within thirty days of the Complaint based on fraudulent joinder of Conrail, this Court could have pierced the pleadings to consider evidence that Conrail no longer owned the bridge at issue. Norfolk Southern would and could have presented such evidence at that time, making it unnecessary to wait almost eleven months to file a notice of removal. Thus, defendant's current Notice of Removal is untimely.

## III. CONCLUSION

For the foregoing reasons, plaintiffs' Motion to Remand is granted.

E.D.Pa.,2008.

Santos v. Norfolk Southern Ry. Co.

Not Reported in F.Supp.2d, 2008 WL 4694558 (E.D.Pa.)


END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

# Exhibit D

**Westlaw Delivery Summary Report for DODGE,ANDREW D**

| | |
|---|---|
| Date/Time of Request: | Friday, October 11, 2013 11:41 Eastern |
| Client Identifier: | 76797.1 |
| Database: | DCT |
| Citation Text: | Not Reported in F.Supp.2d |
| Lines: | 329 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson Reuters, West and their affiliates.

Westlaw.

Not Reported in F.Supp.2d, 2006 WL 2716092 (D.N.J.)
**(Cite as: 2006 WL 2716092 (D.N.J.))**
**C**
Only the Westlaw citation is currently available.

United States District Court,
D. New Jersey.
NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, et al., Plaintiffs,
v.
DIXO COMPANY, INC., et al., Defendants.

Civil Action No. 06-1041(SRC).
Sept. 22, 2006.

Barry A. Knopf, Leonard Z. Kaufmann, Cohn, Lifland, Pearlman, Herrmann & Knopf, ESQS, Saddle Brook, NJ, Brendan E. Ruane, Office of the NJ Attorney General, RJ Hughes Justice Complex, for Plaintiffs.

Damon R. Sedita, Sedita, Campisano & Campisano, LLC, EDgewater Commons Two, Fairfield, NJ, John Mcgahren, Stephanie Rebecca Feingold, Patton Boggs, LLP, Newark, NJ, Eugene J. Kuzinski, Ballard Spahr Andrews & Ingersoll, LLP, Voorhees, NJ, LInda J. Mack, Fox RothschilD LLP, Lawrenceville, NJ, Joseph F. Lagrotteria, St. John & Wayne, ESQS., Newark, NJ, Laurie Ann Poulos, Holland & Knight LLP, New York, NY, for Defendants.

Brett D. Rickman, Office of NJ Attorney General, Department of Law & Public Safety RJ Hughes Justice Complex, Trenton, NJ for Counter Defendant.

Kerry E. Higgins, Mckenna, Dupont, Higgins & Byrnes, P.C., Red Bank, NJ, for Cross Claimant.

## OPINION

CHESLER, District Judge.

*1 This matter comes before the Court upon Plaintiffs' Motion To Remand this action (docket item # 6) to the Superior Court of New Jersey, Law Division, and upon the Report and Recommendation (docket item # 37) issued by United States Magistrate Judge Patty Shwartz pursuant to 28 U.S.C. § 636(b)(1) on June 12, 2006. Defendant Stepan Company [FN1] ("Stepan") submitted a timely objection to the Report and Recommendation, and Plaintiffs thereafter submitted a brief in response to Stepan's objection. This Court has considered the papers submitted by the parties in connection with the motion to remand and with Judge Shwartz's Report and Recommendation. It has also examined the analysis of the Magistrate Judge, set forth in the Opinion delivered on the record on June 12, 2006, recommending that this action be remanded to state court. Following a *de novo* review of those matters in the Report and Recommendation to which objection has been filed, and for the reasons discussed below, this Court adopts the June 12, 2006 Report and Recommendation and grants Plaintiffs' motion to remand this action.

FN1. Stepan Company owns the Maywood Chemical Company site, one of the properties involved in this action for natural resource damages. Stepan Company acquired Maywood Chemical Company in 1959. For purposes of simplicity, this Court will refer to the entity as "Stepan" regardless of whether the conduct examined occurred before or after 1959.

## I. STANDARD OF REVIEW OF THE REPORT AND RECOMMENDATION

Title 28 U.S.C. § 636(b)(1) authorizes a district judge to designate a magistrate judge to conduct hearings and submit proposed findings of fact and recommendations for the disposition of certain motions. 28 U.S.C. § 636(b)(1) Within ten days of being served with the magistrate judge's Report and Recommendation, any party may file objections to the Report and Recommendation. *Id.* The statute provides that, in the event an objection is submitted,

[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may then accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

*Id.*

## II. BACKGROUND

This Court adopts the magistrate judge's recitation of the factual and procedural background of this action, set forth in the transcript of proceedings before Judge Shwartz on June 12, 2006. (Transcript of Motion Before the Honorable Patty Shwartz ("Tr.") dated June 12, 2006 at 25:15-29:17.)

## III. LEGAL ANALYSIS

A. *Federal Officer Removal Statute*

Defendant Stepan's removal petition asserts that this Court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1442(a)(1), which provides that actions against the "United States or any agency thereof or any officer **(or any person acting under that officer)** of the United States or of any agency thereof sued in an official or individual capacity for any act under color of such office ..." may be removed to federal court. 28 U.S.C. § 1442(a)(1) (emphasis added). As the language of the statute makes clear, a private party may remove an action based on this "federal officer" removal statute. *Id.; New Jersey Department of Environmental Protection v. Exxon Mobil Corp.* *("Exxon Mobil ")*, 381 F.Supp.2d 398, 401 (D.N.J.2005). To establish federal officer jurisdiction, a defendant must demonstrate that (1) it is a "person" within the meaning of the statute; (2) the plaintiff's claims are based upon the defendant's conduct "acting under" a federal office; (3) it raises a colorable federal defense; and (4) there is a causal nexus between the claims and the conduct performed under color of a federal office. *Feidt v. Owens Corning Fiberglas Corp.,* 153 F.3d 124, 127 (3d Cir.1998). This standard is known as the "*Feidt* test."

**\*2** As with removal petitions based on other statutes, the burden of establishing the propriety of removal and the existence of federal jurisdiction under section 1442(a)(1) is upon the removing party. *Feidt,* 153 F.3d at 127; *Boyer v. Snap-On Tools Corp.,* 913 F .2d 108, 111 (3d Cir.1990), *cert. denied,* 498 U.S. 1085 (1991); *Gilberg v. Stepan Co.,* 24 F.Supp.2d 325, 330 (D.N.J.1998). Because the action at bar involves a private party's attempt to remove under the federal officer removal statute, the policy reasons for generally favoring removal and the existence of federal jurisdiction under section 1442 are not applicable here. *Exxon Mobil,* 381 F.Supp.2d at 403 n. 5. To the contrary, a private party seeking to assert the right of federal officer removal " 'bear[s] a special burden of establishing the official nature of [its] activities.' " *Id.* (quoting *Freiberg v. Swinerton & Walberg Prop. Svcs., Inc.,* 245 F.Supp.2d 1144, 1150 (D.Colo.2002)).

B. *Application of the Feidt Test*

Based upon its review of plaintiffs' motion to remand and Stepan's objection to the Report and Recommendation under the *Feidt* test and under the applicable burden of proof, this Court holds that defendant has failed to meet its burden of establishing the official nature of the conduct of which plaintiffs complain. Magistrate Judge Shwartz properly applied the *Feidt* test to evaluate the existence of jurisdiction under section 1442(a)(1) and correctly concluded that defendant had failed to satisfy the second and fourth prongs of that test.[FN2] This Court finds, as the magistrate judge did, that Stepan simply has not provided sufficient evidence to establish that its discharges of hazardous substances were controlled or directed by the government.

> FN2. In *Exxon Mobil,* the court noted that "many courts combine the second and fourth components [of the *Feidt* test] into one analysis" and elected to follow suit. *Exxon Mobil,* 381 F.Supp.2d at 403 n. 7. This Court will likewise analyze the second and fourth prongs together.

To establish that it was "acting under" a federal officer within the meaning of section 1442(a)(1), the private actor defendant must demonstrate that it performed *the complained-of activity* at the direction of official federal authority. *Willingham v. Morgan,* 395 U.S. 402, 409 (1969); *Exxon Mobil,* 381 F.Supp.2d at 404; *Arness v. Boeing North American, Inc.,* 997 F.Supp. 1268, 1273 (C.D.Cal.1998). Moreover, courts generally require that the private actor defendant demonstrate that the federal officer had "direct and detailed control" over the litigated activity. *Exxon Mobil,* 381 F.Supp.2d at 404; *Arness,* 997 F.Supp. at 1273; *Reed v. Final Oil & Chem. Co.,* 995 F.Supp. 705, 710 (E.D.Tex.1998). The analysis can be summed up as follows:

Removal must be predicated upon a showing that the acts forming the basis of the state suit were performed pursuant to an officer's direct orders or comprehensive and detailed regulations. By contrast, if the corporation establishes only that the relevant acts occurred under the general auspices of federal direction then it is not entitled to § 1442(a)(1) removal.

*Good v. Armstrong World Indus., Inc.,* 914 F.Supp. 1125, 1128 (E.D.Pa.1996) (citations omitted).

**\*3** The Court takes notice and accepts as true that Stepan manufactured radiological and chemical products for use by, and pursuant to contracts with, the United States government and its agencies. (Certification of John McGahren in Support of Stepan Company's Brief In Opposition to Plaintiffs' Motion To Remand ("McGahren Cert.") Ex. 1-10.) The fact that Stepan was a government contractor at the relevant time that the allegedly wrongful conduct occurred is, however, unavailing under the *Feidt* test. *Cf. Virden v. Altria Group, Inc.,* 304 F.Supp.2d 832, 845 (N.D.W.V.2004) (observing that "paradigm cases in which private actors have succeeded in removing cases under the statute have involved government contractors with *limited discretion"*) (emphasis added)). Stepan must demonstrate that the government had "direct and detailed control" over the *litigated activity.*

In this case, insofar as the claims against Stepan are concerned, the litigated activity is Stepan's discharges [FN3] of hazardous substances on Stepan's Maywood, New Jersey property. (Complaint, ¶¶ 68, 70, 73, 75, 81, 86.) In support of its position that the government did in fact direct and control discharges of hazardous material at the Maywood site, Stepan cites two items. (Defendant Stepan's Brief in Opposition to Plaintiffs' Motion For Remand at 12.) One of these is a September 21, 1987 Administrative Order, issued by the United States Environmental Protection Agency ("EPA"), which states in its findings of fact and conclusions of law that "the Atomic Energy Commission (AEC) issued a license to the Maywood Chemical Co. for the possession of thorium wastes stored on the property" and that the "AEC approved the cleanup and burial of wastes on company property." (Notice of Removal, Ex. F, ¶¶ 11-12.) The other item is an October 22, 1963 internal company memorandum discussing the thorium waste pile on the Maywood property. In relevant part, that memorandum states as follows:

> FN3. Under the New Jersey Spill Compensation and Control Act, *N.J.S.A.* 58:10-23.11 et *seq.,* "discharge" means "any intentional or unintentional action or omission resulting in the releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of hazardous substances into the waters or onto the lands of the State, or into waters outside the jurisdiction of the State when damage may result to the lands, waters or natural resources within the jurisdiction of the State." *N.J.S.A.* 58:10-23.11b

However, in 1947 the AEC prompted us to collect the thorium wastes separately and store them for possible emergency use in the future. Therefore, we contend that the AEC prevented Maywood from solving its problem (waste) concurrent with operating the thorium plant and especially prior to the AEC act [sic] of 1954. For this reason, we intend to approach the AEC when we are ready to move on the thorium dike asking their [sic] financial help in correcting the situation. (McGahren Cert., Ex. 13.)

Neither of these two documents satisfies Stepan's burden of demonstrating that it acted under the direction of a federal officer in discharging hazardous substances. The AEC's approval of cleanup and burial of waste on the property does not establish that the United States or one its agencies or departments exercised direct and detailed control over the discharges of which plaintiffs complain. Even viewing this evidence in the light most favorable to Stepan, this Court concludes that, at best, it may be interpreted as showing that Stepan was acting under the general auspices of the government, a showing which falls far short of what is required to establish federal officer removal jurisdiction. The internal memorandum provides no support for Stepan's position. The opinion of an employee of the company that the AEC "prompted" Stepan to collect and store thorium waste and that it is therefore to blame for Stepan's thorium waste problem does not demonstrate that Stepan performed the complained-of discharges at the direction of federal officials.

http://web2.westlaw.com/print/printstream.aspx?rs=WLW13.07&desti...

*4 An opinion brought to the Court's attention by Stepan in a supplemental letter brief dated July 27, 2006 does not alter this Court's analysis. That opinion, in the case of *Pierce Morgan v. Ford Motor Co.,* Civil Action No. 06-1080, concerned a motion for remand based on the failure to meet the requirements of the federal officer removal statute. (Transcript of Proceedings Before the Honorable Joel A. Pisano dated July 5, 2006 (*"Pierce Morgan Tr."*) at 3:4-18: attached to July 27, 2006 Supplemental Letter Brief as Ex. 2.) The gravamen of the *Pierce Morgan* Complaint was that defendant were negligent in their performance of an environmental clean-up as directed by an Administrative Consent Order issued by the EPA. (*Pierce Morgan* Tr. at 50:4-51:5.) The Court found, therefore, that defendants were acting under a federal office with respect to the complained-of conduct. (*Id.* at 51:22-52:2.) For the reasons discussed above, that is plainly not the case in the action at bar, in which the gravamen of the Complaint does not relate to any activity that Stepan has shown was undertaken under the government's detailed direction.

In short, Stepan has failed to present evidence that the government directed and controlled any aspect of Stepan's disposal of hazardous substances or the associated discharges.[FN4] It has not met its burden of demonstrating that federal jurisdiction exists under the federal officer removal statute.

> FN4. In support of its objections to the magistrate judge's Report & Recommendation, Stepan also submitted the Declaration of Robert Zoch, which it purports constitutes "additional facts and evidence concerning the wartime and post-war control of the federal government over the disposal of waste materials at the Maywood site and the resulting discharges." (Defendant Stepan's Objection to Magistrate Judge Shwartz's Report and Recommendation on Plaintiffs' Motion For Remand at 14.) This "additional evidence" reiterates that the AEC directed Stepan to segregate and store thorium and lithium waste. It does not, however, touch upon the facts crucial to the analysis of federal officer subject matter jurisdiction in this case. Specifically, like the EPA Administrative Order and internal company memorandum discussed above, it does not provide any indication that the government controlled the discharges of which plaintiff complains.

C. *Standard of Review of Remand Motion*

Stepan also objects to the magistrate judge's Report & Recommendation on the ground that, according to Stepan, Magistrate Judge Shwartz did not apply the correct standard of review to plaintiffs' motion to remand. In particular Stepan asserts that the magistrate judge incorrectly required that Stepan, as the removing party, prove the facts substantiating federal officer removal, rather than accepting as true its allegations of those facts as stated in the Notice of Removal. Stepan argues, in sum, that "the magistrate judge applied a burden of proof ... that was far more demanding than what is required for a motion to remand under federal officer jurisdiction." (Defendant Stepan's Objection to Magistrate Judge Shwartz's Report and Recommendation on Plaintiffs' Motion For Remand at 10.) Stepan's position is incorrect and finds no support in our jurisprudence.

Once jurisdiction is challenged, the party invoking federal jurisdiction bears the burden of proving that jurisdiction is proper. *Corwin Jeep Sales v. American Motors Sales,* 670 F.Supp. 591, 595 (M.D.Pa.1986); *see also Samuel-Bassett v. KIA Motors Am., Inc.,* 357 F.3d 392, 396 (3d Cir.2004) (holding, in the context of a removal under 28 U.S.C. § 1441, that "[t]he party asserting jurisdiction bears the burden of showing that at all stages of the litigation the case is properly before the federal court"). While this Court will accept all well-pleaded allegations as true, it need not credit a party's "bald assertions" or "legal conclusions." *Morse v. Lower Merion School Dist.,* 132 F.3d 902, 906 (3d Cir.1997). In Gilberg, this Court held that "[a] defendant cannot establish that it was a federal agency or employee, by merely alleging in its Notice, as Stepan does, that it was an 'agent or employee of the United States Government.' " *Gilberg,* 24 F.Supp.2d at 347. With respect to Stepan's removal petition, Stepan cannot establish that it was acting under the direction of a federal agency or officer by merely

alleging that the "harm alleged by Plaintiffs is directly related to the actions taken both by the government itself and pursuant to detailed direction from the government ..." (Notice of Removal ¶ 26.) The position taken by Stepan, in which it urges that the Court must accept as true its allegations that the criteria for federal officer removal are met, would render the well-established burden of proof on the party asserting federal jurisdiction empty and artificial. This Court concludes that the magistrate judge applied the correct standard and properly looked to Stepan to present evidence supporting the jurisdictional averments of its removal petition.

D. *Stepan's Request for Limited Jurisdictional Discovery*

*5 During oral argument before Magistrate Judge Shwartz on the motion for remand, Stepan requested that the Court retain jurisdiction over this case to permit the parties to conduct discovery on the merits of the claims for use of that discovery in the remanded state action. (Tr. 21:14-22:19, 23:20-24:4.) The magistrate judge was clearly correct in denying that application. If this Court does not have jurisdiction, it cannot "retain jurisdiction" and allow this action to develop in federal court without any basis of authority to adjudicate this controversy. Stepan did not present at oral argument, and does not cite in its brief objecting to the Report & Recommendation, any legal authority for this Court to retain non-existent jurisdiction.

As for its revised request that the Court retain jurisdiction to allow the parties to conduct jurisdictional discovery (Defendant Stepan's Objection to Magistrate Judge Shwartz's Report and Recommendation on Plaintiffs' Motion For Remand at 20), Stepan correctly recites the law, but its request will not be granted. The District Court "has inherent power and jurisdiction to decide whether it has jurisdiction." *In Re Automotive Refinishing Paint Antitrust Lit.,* 358 F.3d 288, 303 (3d Cir.2004) (citing *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 706 (1982)). The Court may, in its discretion, order discovery to ascertain facts that bear on whether the Court has jurisdiction to entertain the merits of the action. *Openheimer Fund, Inc. v. Sanders,* 437 U.S. 349, 351 n. 13 (1978); *Toys 'R' Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 455-56 (3d Cir.2003). The Court, however, declines to order such jurisdictional discovery in this case. Stepan requests this relief for the first time in its brief objecting the Report & Recommendation, and the Court will therefore not entertain it.

## IV. CONCLUSION

For the foregoing reasons, the Court adopts Magistrate Judge Shwartz's Report & Recommendation and accordingly grants Plaintiffs' motion to remand. An appropriate form of order will be filed together with this Opinion.

D.N.J.,2006.
New Jersey Dept. of Environmental Protection v. Dixo Company, Inc.
Not Reported in F.Supp.2d, 2006 WL 2716092 (D.N.J.)

END OF DOCUMENT
© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

# Exhibit E

**Westlaw Delivery Summary Report for DODGE,ANDREW D**

| | |
|---|---|
| Date/Time of Request: | Friday, October 11, 2013 10:54 Eastern |
| Client Identifier: | 76797.1 |
| Database: | DCT |
| Citation Text: | Not Reported in F.Supp.2d |
| Lines: | 430 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson Reuters, West and their affiliates.

Westlaw.

Not Reported in F.Supp.2d, 2008 WL 4723017 (D.N.J.)
**(Cite as: 2008 WL 4723017 (D.N.J.))**

Only the Westlaw citation is currently available.

United States District Court,
D. New Jersey.
William M. MOORE, Plaintiff,
v.
TURNER CONSTRUCTION COMPANY; John Does (1-5); ABC Corporations (1-15), Defendants.
Patrick O'Flaherty, Plaintiff,
v.
Turner Construction Company; John Does (1-5); ABC Corporations (1-15), Defendants.

Civil Action Nos. 3:07-cv-5658-FLW, 3:08-cv-0867-FLW.
Oct. 24, 2008.

West KeySummary**Federal Courts 170B** ⟜109

170B Federal Courts
    170BII Venue
        170BII(B) Change of Venue
            170BII(B)1 In General; Venue Laid in Proper Forum
                170Bk106 Determination in Particular Transferable Actions
                    170Bk109 k. Contracts; Insurance; Sales. Most Cited Cases

**Federal Courts 170B ⬤➞1140**

170B Federal Courts
    170BXIII Concurrent and Conflicting Jurisdiction and Comity as Between Federal Courts
        170Bk1131 Exclusive or Concurrent Jurisdiction
            170Bk1140 k. War and Emergency Measures; Renegotiation of War Contracts. Most Cited Cases

Construction company's motion to transfer venue, in construction worker's breach of contract claims against construction company, to the Southern District of New York pursuant to Air Transportation System Safety and Stabilization Act (ATSSSA) was denied. The ATSSSA provided that the Southern District of New York should have exclusive jurisdiction over all actions resulting from, or relating to the terrorist-related aircraft crashes of September 11, 2001. Construction worker sought compensatory damages to alleviate economic harms that arose from a contractual dispute related to construction and clean-up work at Ground Zero, where the basis for the contract was a but for consequence of the September 11th attacks. ATSSA § 408(b)(3).

Sean F. Byrnes, Law Offices of Sean F. Byrnes, Red Bank, NJ, for Plaintiff.

Robert H. Baumgarten, London Fischer, LLP New York, NY, for Defendants.

## OPINION

WOLFSON, District Judge.

**\*1** Presently before the Court are motions by Defendant Turner Construction ("Defendant") to dismiss individual Complaints brought by Plaintiffs Patrick O'Flaherty ("O'Flaherty") and William Moore ("Moore") for failure to bring suit within the statute of limitations. In the alternative, Defendant moves to have the plaintiffs' claims transferred to the Southern District of New York, pursuant to 408(b)(3) of the Air Transportation System Safety and Stabilization Act ("ATSSSA"). Both O'Flaherty and Moore allege that Defendant was in breach of contract when it failed to compensate them for their services in connection with construction and clean-up work at Ground Zero.

## I. FACTUAL BACKGROUND

Since Defendant moves to dismiss the plaintiffs' Complaints pursuant to *Fed.R.Civ.P.* 12(b)(6), all facts alleged in the complaint are assumed to be true.

Defendant is a construction company that conducts operations throughout the United States. O'Flaherty Compl. ¶ 1. After the attacks on the World Trade Center ("WTC") on September 11, 2001, the City of New York retained Defendant's services for debris removal and cleanup operations at Ground Zero. Both plaintiffs "reported to ground zero ... to assist in the rescue and recovery efforts" and allege they worked at the site "over the course of the next month or so." *Id.* ¶ 2. Each plaintiff, according to their respective Complaints, had a different role in the cleanup operation. O'Flaherty was retained by Defendant as an independent contractor. *Id.* ¶ 5. In order to be paid for his services, O'Flaherty submitted a W-4 and signed a disclaimer with Defendant. *Id.* ¶ 6. Moore, too, was an independent contractor working for Turner but was also named Branch Chief in the Joint Task Force operated by the Office of Emergency Management for the City of New York. Moore Compl. ¶¶ 4-6. Moore was sponsored for this position by his union, Teamsters Local 469. *Id.* ¶ 7. Additionally, Moore provided Defendant with his normal hourly rates and benefits package. *Id.* ¶ 8. Upon completion of the cleanup operation, both plaintiffs allege they were not compensated for their services. *Id.* ¶ 9; O'Flaherty Compl. ¶ 7. Numerous attempts made by both plaintiffs to secure their past due wages have allegedly failed. Moore Compl. ¶ 8; O'Flaherty Compl. ¶ 10.

Moore and O'Flaherty filed separate causes of action in New Jersey Superior Court, Monmouth County Vicinage on January 15, 2008 and October 27, 2007 respectively. Both actions were removed by Defendant to the United States District Court for the District of New Jersey.

## II. DISCUSSION

### A. Standard of Review

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d Cir.2008) (citation and quotations omitted). Recently, in *Bell Atlantic Corporation v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court clarified the 12(b)(6) standard. Specifically, the Court "retired" the language contained in *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 1968 (quoting *Conley,* 355 U.S. at 45-46). Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 1965. As the Third Circuit has stated, "[t]he Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips,* 515 F.3d at 234 (quoting *Twombly,* 127 S.Ct. at 1965).

### B. ATSSSA Transfer

**\*2** At the onset, this Court must satisfy itself that there is proper subject matter jurisdiction over the case at bar. *Liberty Mut. Ins. Co. v. Ward Trucking Corp.,* 48 F.3d 742, 750 (3d Cir.1995) ("[T]he general rule that federal courts have an ever-present obligation to satisfy themselves of their subject matter jurisdiction and to decide the issue sua *sponte* applies equally in removal cases.").[FN1] Defendant claims that the Southern District of New York is vested with exclusive jurisdiction over Plaintiffs' claims. Specifically, Defendant contends that the Air Transportation System Safety and Stabilization Act ("ATSSSA") requires the plaintiffs' breach of contract claims to be brought in the Southern District of New York because the factual allegations arise out of cleanup work related to the terrorist attacks of September 11, 2001.

> FN1. In its Notice of Removal for both cases, Defendant offered two grounds for proper removal: (1) the Southern District of New York's exclusive jurisdiction over September 11th-related litigation as provided for by 408(b)(3) of the Air Transportation and System Safety and Stabilization Act ("ATSSSA"), discussed *infra;* and (2) the federal officer removal statute, codified at 28 U.S.C. § 1442(a)(1), discussed *infra.* First, the Court will address whether ATSSSA mandates transfer of this case to the Southern District. Second, the Court will determine whether removal was proper pursuant to 1442(a)(1).

ATSSSA states, in pertinent part, that:

The United States District Court for the Southern District of New York shall have original and exclusive jurisdiction over

http://web2.westlaw.com/print/printstream.aspx?rs=WLW13.07&desti...

all actions brought for any claim (including any claim for loss of property, personal injury or death) resulting from or relating to the terrorist-related aircraft crashes of September 11, 2001.

ATSSA § 408(b)(3). The Act's underlying purpose in consolidating jurisdiction over these claims into one forum "was to ensure consistency and efficiency in resolving the many expected actions arising from the events of September 11." *The Canada Life Assurance Co. v. Convervium Ruckversicherung AG, 335 F.3d 52, 59 (2d Cir.2003)* (citing Cong. Rec. S9594 (Sept. 21, 2001)). Nonetheless, the broad jurisdictional grant of "any claim resulting from or relating to ... September 11" has been construed to not include actions claiming "economic losses that would not have been suffered 'but for' the events of September 11 but otherwise involve no claim or defense raising an issue of law or fact involving those events." *Id.; Combined Insurance Co. Of America v. Certain Underwriters at Lloyd's London, 75 Fed. Appx. 799, 801 (2d Cir.2003)* (concurring with the *Canada Life* Court that this interpretation is "compelled by the language of the provision, canons of statutory construction, section 408(b)(3)s legislative purpose, and the need for judicial efficiency."). In declining to extend 408(b)(3) to economic harms alleged to be a "but for" consequence of the September 11th attacks, the Second Circuit stated:

> We note at the threshold that appellant's jurisdictional theory is not simply that its claims *can* be brought in the Souther District of New York. Because Section 408(b)(3) provides exclusive jursdiction, [plaintiff's] theory necessarily is that its breach of contract action *must* be brought in the Southern District and cannot be brought anywhere else at least in the United States. In that context, the words "all actions brought for any claim ... resulting from or relating to" the events of September 11, 2001 must be read either to draw the jurisdictional line short of litigation involving economic losses that are related to those events only as a "but for" consequence or to lead to absurd results.

\*3 *Canada Life, 335 F.3d at 57.*

The dispositive inquiry in determining whether ATSSSA's jurisdictional grant applies is whether the actual events of September 11th are relevant to the dispute. Thus, issues of contract interpretation wholly unrelated to the underlying facts and circumstances of the September 11th attacks do not fall within the purview of 408(b)(3)'s exclusive jurisdictional grant. *Combined Insurance Co. of America, 75 Fed. Appx. at 801* (citing *Canada Life, 335 F.3d at 52*) (finding that because the parties' contractual dispute "d[id] not require the deciding court to refer to or choose among competing descriptions of the *events* of September 11th itself," 408(b)(3) did not vest the Southern District of New York with exclusive jurisdiction over the claim). In *Combined Insurance Co. of America,* the Second Circuit determined that allowing the case to be heard in another forum did not create a risk of "inconsistent and inefficient judgements across the spectrum of September 11th-related litigation, which is what section 408(b)(3) truly seeks to avoid." *Id.; see also WTC Captive Insurance Co., Inc. v. Liberty Mutual Fire Insurance Co., 537 F.Supp.2d 619, 625 (S.D.N.Y.2008)* (finding, *inter alia,* that insurance contract claims not involving "the World Trade Center, or limitations on rights and recoveries provided by the ATSSSA" fall within the province of state law.).

Here, Defendant advances a similar argument as made in *Canada Life,* In support of this argument, Defendant relies on *McNally et al v. Port Authority et al, 414 F.2d 352 (2d Cir.2005),* which held 408(b)(3)'s exclusive jurisdictional grant included personal injury claims of recovery workers at Ground Zero. Defendant contends that because the *McNally* personal injury claims arose out of facts and circumstances occurring weeks and months after the September 11th attacks, a contract dispute involving workers similarly situated to the *McNally* plaintiffs precludes them from bringing this action in any other forum. This Court disagrees. Defendant's position "would lead to absurd results," namely, mandating that the Southern District of New York handle a "tsunami of actions" that share no common nucleus of facts arising from the events of September 11th. *See Canada Life, 335 F.3d at 59* (warning that a similar position on 408(b)(3) would result in "[v]ast numbers of civil defendants in courts other than the Southern District [being] able to claim that they have been sued in a court that lacks jurisdiction.").

10/11/2013 10:54 AM

http://web2.westlaw.com/print/printstream.aspx?rs=WLW13.07&desti...

Moreover, *McNally* is distinguishable from the case at bar because unlike the *McNally* plaintiffs who sought personal injury damages, which are explicitly allotted for in 408(b)(3), the plaintiffs here seek compensatory damages to alleviate economic harms that arose from a contractual dispute where the basis for the contract was a "but for" consequence of the September 11th attacks. *See McNally,* 414 F.2d at 352. If this Court were to decide this matter on a motion for summary judgment, for example, it would not need to determine whether there are factual disputes arising out of the events occurring on September 11th. In sum, Defendant offers an even more attenuated connection to September 11th than the *Canada Life* plaintiff, whose reinsurance losses were a direct "but for" consequence of the September 11th attacks. Accordingly, Defendant's motion to transfer venue to the Southern District of New York pursuant to 408(b)(3) is denied.

## C. Subject Matter Jurisdiction Pursuant to 1442(a)(1)

*4 Alternatively, Defendant asserts that removal is proper in this matter pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1). In response, the plaintiffs both object to this Court's subject matter jurisdiction, contending that the matter entails state law claims with no basis for federal jurisdiction.[FN2]

> FN2. Both plaintiffs assert in their opposition papers to this Motion that although the parties are of diverse citizenship, neither plaintiff is claiming $75,000 in damages.

The federal officer removal statute, 28 U.S.C. § 1442(a)(1), "directs that an action in state court brought against an officer, or person acting under that officer, of the United States or an agency thereof, for any act under color of such office may be removed to federal court." *N.J. Dep't of Environmental Protection v. Exxon Mobil Corp.,* 381 F.Supp.2d 398, 401 (D.N.J.2005). Removal pursuant to the federal officer removal statute is proper if a defendant can establish that:

> (1) it is a "person" within the meaning of the statute; (2) the plaintiff's claims are based upon the defendant's conduct "acting under" a federal office; (3) it raises a colorable federal defense; and (4) there is a casual nexus between the claims and the conduct performed under color of a federal office.

*Feidt v. Owens Corning Fiberglas Corp.,* 153 F.3d 124, 127 (3d Cir.1998) (citation omitted). This burden of demonstrating there is jurisdiction under 1442(a)(1) rests squarely with the defendant. Moreover, where the defendant seeking removal is a private party, the defendant " 'bear [s] a special burden of establishing the official nature of [its] activities.' " *Exxon Mobil,* 381 F.Supp.2d at 403 n. 5. Private party defendants must carry this heightened burden because "the policy reasons for generally favoring removal and the existence of federal jurisdiction under section 1442 are not applicable." *Orthopedic Specialists of New Jersey PA v. Horizon Blue Cross/Blue Shield of New Jersey,* 518 F.Supp.2d. 128, 133 (D.N.J.2007) (citation omitted). Finally "[w]hile [1442(a)(1) ] is to be liberally construed, it must nevertheless be interpreted with the highest regard for the right of the states to make and enforce their own laws in the field belonging to them under the Constitution." *Joseph v. Fluor Corp.,* 513 F.Supp.2d. 664 (E.D.La.2007) (*quoting Preston v. Tenet Healthsystem Memorial Medical Center, Inc.,* 463 F.Supp.2d 583, 590 (E.D.La.2006).

Here, the Court will discuss each of the four factors. First, the Court will determine whether Defendant is a person under 1442(a) (1). Second, because "[m]any courts [have] combine[d] the second and fourth components into one analysis," this Court will analyze whether Defendant was under direct or detailed control of a federal officer and if there was a casual nexus between Defendant's conduct and the plaintiffs' claims. *Exxon Mobil,* 381 F.Supp.2d at 403 n. 7. Finally, this Court will determine if Defendant has asserted a colorable federal defense.

## 1. Defendant's Status as a "Person"

Defendant's status as a "person" under 1442(a)(1) has not been challenged by the plaintiffs. Courts have consistently recognized that for the purposes of 1442(a)(1), a corporation such as Defendant qualifies as a person. *In re Methyl Butyl Ether Products Liability Litigation,* 488 F.3d 112, 124 (2d Cir.2007) ("[I]t is clear that corporations are 'persons' within the meaning of the [1442(a)(1) ] statute."); *Orthopedic Specialists,* 518 F.Supp.2d at 134; *Exxon Mobil* 381 F.Supp.2d at 403 n. 6; *Crackau v. Kucent Technologies,* 2003 WL 21665135, at *2 (D.N.J. Jun.25, 2003). Accordingly, this Court will assume that Defendant satisfies the first prong of the *Feidt* factors.

## 2. Whether Defendant "Acted Under" a Federal Office

**\*5** The second and fourth *Feidt* factors require a private party requesting removal pursuant to 1442(a)(1) to "demonstrate that it performed the *complained-of activity* at the direction of official federal authority." *Orthopedic Specialists,* 518 F.Supp.2d at 134 (emphasis in original); *New Jersey Dep't of Environmental Protection v. Dixo Company, Inc.,* No. 06-1041, 2006 WL 2716092, *3 (D.N.J. Sept.22, 2006) (limiting the court's 1442(a) (1) analysis to the complained-of activity, the disposal of hazardous waste on private property in New Jersey). Specifically, a defendant must show that the action in question was taken under the direct and detailed control of a federal officer. *Id.* "[T]his control requirement can be satisfied by strong government intervention and the threat that a defendant will be sued in state court based upon actions taken pursuant to federal direction." *Exxon Mobil,* 381 F.Supp.2d at 404 (citation omitted); *Good v. Armstrong World Industries, Inc.,* 914 F.Supp. 1125, 1128 (E.D.Pa.1996) (holding that removal is proper when the acts in question are "performed pursuant to an officer's direct orders or comprehensive and detailed regulations.") Conversely, if a private party only establishes that the acts in question "occurred under the general auspices of federal direction," removal is improper. *Good Armstrong,* 914 F.Supp. at 1128.

For example, in *Joseph v. Fluor Corp.,* 513 F.Supp.2d. 664 (E.D.La.2007), the district court held that a private party who supplied trailers to FEMA in the wake of Hurricane Katrina could not invoke the federal officer removal statute in a cause of action arising out of personal injuries from a gas explosion in a trailer that the defendant supplied. The court stated that "[a]lthough FEMA's purchase orders 'establish some basic parameters within which services [were] to be performed,' *Guillory,* 872 F.Supp. at 348, it is simply not the case that private entities are entitled to a federal forum whenever litigation arises concerning products sold to the federal government." *Joseph,* 513 F.Supp 2d at 673.

Additionally, an examination of the case law illustrates that a causal nexus is one where the complained-of action is closely related to direct federal control. *Exxon Mobil,* 381 F.Supp.2d at 404-05; *Bahrs v. Hughes Aircraft Co.,* 795 F.Supp. 965, 970 (D.Ariz.1992) (finding removal was improper where government involvement in the production of war materials was not closely related to action in dispute, waste disposal). In *Exxon Mobil,* the State of New Jersey alleged that the defendant violated the New Jersey Spill Compensation and Control Act in connection with the defendant's unlawful disposal of waste in various parts of New Jersey. 381 F.Supp.2d at 404. The defendant argued that because its manufacturing and production operations were under the detailed control of the federal government, the action could be removed to federal court. *Id.* In remanding the action to state court, the district court concurred with the plaintiff's argument that the "[d]efendant ha [d] failed to demonstrate a causal nexus between the allegations of improper disposal of toxic substances into the waters of the State of New Jersey and those of Defendant's actions directed by an officer of the federal government." *Id.*

**\*6** In the instant matter, Defendant contends that "[f]ederal agencies and officers exercised control over particular health, safety and other issues relating to the rescue, recovery, cleanup, debris removal and/or construction efforts at the World Trade Center ("WTC") site following the attacks on September 11, 2001." Additionally, Defendant asserts that the funds for the rescue and cleanup removal were provided by FEMA. Nonetheless, Defendant's vague assertion of federal control over its

cleanup operations does not rise to the level of "direct or detailed control." In its notice of removal, Defendant does not contend that FEMA mandated or authorized it to withhold paychecks from the plaintiffs. Much like *Joseph,* where FEMA provided broad guidelines when contracting to purchase the defendant's trailers, here, Defendant was given broad safety and procedural guidelines in which to perform the cleanup operation and was paid by FEMA accordingly. *See Joseph,* 513 F.Supp 2d at 673. Moreover, the gravamen of the plaintiffs' Complaints does not arise out of FEMA's guidelines or supervision of Defendant's work. Instead, the injury flows from Defenant's alleged failure to compensate the plaintiffs for their work at Ground Zero. Accordingly, this Court finds that Defendant has failed to satisfy the second *Feidt* prong.

Moreover, Defendant does not present any evidence or make any claims that would give rise to a causall nexus between FEMA's control of Defendant's cleanup operations and its alleged failure to pay the plaintiffs. Much like the defendant in *Exxon Mobil* where the district court did not find any connection between the federal governmental regulation and the illegal waste disposal, the health and safety guidelines proffered by FEMA are in no way related to Defendant's alleged failure to pay the plaintiffs. *See* 381 F.Supp.2d at 404-05. Accordingly, due to Defendant's failure to offer any evidence that FEMA or any other federal agency exercised control over Defendant's obligation to pay its workers, this Court finds Defendant has not demonstrated a causal nexus as required by *Feidt.*

### 3. Whether Defendant Raises a Colorable Federal Defense

The Court notes it is not obligated to determine whether Defendant has raised a colorable federal defense since the Court's analysis as to the second and fourth prongs are dispositive. *See Orthopedic Specialists,* 518 F.Supp.2d at 128 (declining to analyze the third and fourth prongs of the *Feidt* analysis after finding the defendant was not under the direct or detailed control of a federal officer). Nonetheless, assuming *arguendo* that Defendant demonstrated that its decision not pay the plaintiffs came under the direct or detailed control of a federal officer, Defendant must also establish a colorable federal defense to satisfy the *Feidt* analysis.

In order to remove an action from state to federal court under 1442(a)(1), a defendant must raise a colorable defense under federal law. The defense need not be meritorious; instead, the defendant must demonstrate that "a colorable claim to such a defense has been made." *Exxon Mobil,* 381 F.Supp.2d at 403. "Questions regarding the merits of an asserted defense are distinct and have no connection to the question of jurisdiction." *New Jersey Dep't of Environmental Protection v. Viacom, Inc.,* No. 06-1753, 2006 WL 3534364, at *3 (D.N.J. Dec.7, 2006) (citing *Mesa v. California,* 489 U.S. 121, 129, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989)). Thus, the assertion of a specific federal defense such as official immunity pursuant to the Federal Tort Claims Act, the government military contractor defense established in *Boyle v. United Technologies Corp.,* 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988), or the nonmilitary contractor defense as set forth in *Carley v. Wheeled Coach,* 991 F.2d 117(3d Cir.1993) satisfy the defendant's burden under *Fiedt. See e.g., Viacom,* 2006 WL 3534364 at * 3 (finding that cursory assertions of specific federal defenses such as the government contractor defense and federal preemption defense were sufficient to satisfy *Feidt* ); *Exxon Mobil,* 381 F.Supp.2d at 403 (recognizing that a private party defendant may assert the military and nonmilitary contractor defenses for the purposes of 1442(a)(1) removal).

*7 Here, Defendant's assertion of a federal defense is not pellucid. Indeed, Defendant's Notice of Removal baldly asserts that because it complied with federal directives in conducting its cleanup operations, it "has at least a colorable federal immunity defense." Defendant's *Moore* Notice of Removal ¶ 9. However, Defendant's reference to a general federal defense does not satisfy the standard set forth in the applicable case law. *See e.g., Thompson v. Wheeler,* 898 F.2d 406, 409-10 (3d Cir.1990) (determining that the defendant had a viable "source [for] his federal defense" when he raised the Federal Tort Claims Act); *Viacom,* 2006 WL 3534364 at *3; *Exxon Mobil,* 381 F.Supp.2d at 403; *Miller v. Diamond Shamrock Co.,* 275 F.3d 414, 418 (5th Cir.2001) (finding defendant properly asserted a colorable federal defense when it claimed immunity under the military contractor defense). Accordingly, this Court finds that Defendant has not raised a colorable defense under

federal law.


**III. CONCLUSION**

For the foregoing reasons, both plaintiffs' Complaints are remanded to New Jersey Superior Court, Monmouth County Vicinage.


D.N.J.,2008.

Moore v. Turner Const. Co.

Not Reported in F.Supp.2d, 2008 WL 4723017 (D.N.J.)


END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

# Exhibit F

http://web2.westlaw.com/print/printstream.aspx?rs=WLW13.07&desti...

**Westlaw Delivery Summary Report for DODGE,ANDREW D**

| | |
|---|---|
| Date/Time of Request: | Friday, October 11, 2013 11:48 Eastern |
| Client Identifier: | 76797.1 |
| Database: | DCT |
| Citation Text: | Not Reported in F.Supp.2d |
| Lines: | 445 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson Reuters, West and their affiliates.

Westlaw.

Not Reported in F.Supp.2d, 2012 WL 3240941 (D.N.J.)
**(Cite as: 2012 WL 3240941 (D.N.J.))**

Only the Westlaw citation is currently available.

United States District Court,
D. New Jersey.
Elizabeth LEWIS, Individually and as Executrix of the Estate of Thomas I. Lewis, Plaintiff,
v.
ASBESTOS CORP., LTD. et al, Defendants.

Civil Action No. 10–650 FLW.
Aug. 7, 2012.

Christopher Michael Placitella, Cohen, Placitella & Roth, PC, Red Bank, NJ, for Plaintiff.

Lisa Pascarella, Braaten & Pascarella L.L.C., Manasquan, NJ, Richard V. Jones, Ridgewood, NJ, Christopher S. Kozak, Landman Corsi Ballaine & Ford PC, Madhurika Jeremiah, Goldfein & Joseph, P.C., Philadelphia, PA, for Defendants.

**OPINION**

WOLFSON, District Judge.

*1 Plaintiff Elizabeth Lewis ("Plaintiff" or "Lewis") has filed a motion to remand this matter back to New Jersey state court. Originally, Lewis filed an asbestos claim against a number of companies and Defendant CBS Corporation ("CBS") successfully removed the case to this court based on federal question jurisdiction. What followed was a complex procedural history that involved the matter being made part of a Multi–District Litigation ("MDL") case before the Eastern District of Pennsylvania granted summary judgment for CBS and reassigned the matter back to this court. The only defendants

remaining are Bell Asbestos Mines, Ltd. ("Bell"), Metropolitan Life Insurance Company ("MetLife") and General Electric ("GE") (collectively "Defendants"). Plaintiff believes no independent basis for federal jurisdiction now exists because CBS is no longer a party. For the reasons stated below, the Court disagrees and denies Plaintiff's Motion.

## I. BACKGROUND

### a. Factual Background

The following facts are taken from Plaintiff's Complaint, previously submitted affidavits, and the Eastern District's Opinion from the MDL matter. *See Lewis v. Asbestos Corp., Ltd.,* MDL 875, 2011 WL 5881184 (E.D.Pa. Aug.2, 2011). This case stems from Thomas Lewis' ("Decedent") alleged asbestos exposure. As a member of the U.S. Navy, the Decedent worked as a fireman aboard the U.S.S. Bigelow and the U.S.S. Springfield between 1962 and 1965. *Compl.* at ¶ 1. Then he worked at Johns Manville Plant in Manville, New Jersey from 1965 to 1966 and Chicago Bridge and Iron in Birmingham, Alabama from 1967 to 1977. *Id.* Afterwards, he worked at various paper mills and powerhouses until his retirement in 2000. *Id.* On May 18, 2006, he was diagnosed with malignant mesothelioma and eventually passed away on June 28, 2008.

Lewis alleges that Bell, GE, and MetLife were intimately involved in the production and manufacturing of the asbestos that caused Decedent's cancer. In particular, she alleges that Decedent was exposed to asbestos in the Navy turbines aboard the Bigelow and the Springfield. Bell argues that the Court has subject matter jurisdiction based on the diversity of the parties. GE argues that the Court has subject matter jurisdiction based on federal question because it operated under the control of a federal officer. In particular, GE asserts that the Navy closely monitored its asbestos laden turbines and held them to the highest of standards-so much so that the Navy governed every detail of the turbine. Additionally, GE alleges that the Navy had superior knowledge of any asbestos related health risks.

### b. Procedural Background

On February 13, 2008, Lewis initiated this lawsuit in the Superior Court of New Jersey, Middlesex County. She dismissed GE from that action but then filed a similar complaint on August 8, 2008, against GE and other defendants that are no longer part of this matter. After the filing of the second litigation, the Superior Court granted Plaintiff's motion to consolidate the two actions.

*2 CBS, a defendant because of its acquisition of Westinghouse Electric Corporation, individually filed a Notice of Removal based on 28 U.S.C. § 1442, the Federal Officer Removal Statute. ("FORS"). Once removed to this court, Plaintiff moved to remand back to state court, alleging that removal was untimely and that FORS was inapplicable. Prior to a hearing on the motion, the matter was transferred to MDL unit 875. In his July 29, 2011 Order, Judge Eduardo Robreno of the Eastern District of Pennsylvania denied Plaintiff's motion to remand. The parties then conducted discovery and the judge granted summary judgment for CBS. After the completion of the MDL–875 pre-trial proceedings, the case was transferred back to this court with Bell, MetLife, and GE as the remaining defendants. Plaintiff now moves to remand back to New Jersey state court arguing that without CBS, the court does not have subject matter jurisdiction. Defendant Bell and GE filed separate briefs in opposition. Plaintiff did not reply to either.

## II. DISCUSSION

Defendants argue that remand is improper and the Court has subject matter jurisdiction based upon federal question and diversity grounds. *See* 28 U.S.C. §§ 1331, 1332. Whether addressing federal question or diversity, "[r]emoval statutes are to

be strictly construed against removal, and all doubts are to be resolved in favor of remand." *Lopienski v. Centocor, Inc.,* 2008 WL 2565065, *2 (D.N.J. Jun.25, 2008); *Brown v. Francis,* 75 F.3d 860, 865 (3d Cir.1996).

### a. Diversity Jurisdiction

Bell argues that the Court retains jurisdiction based on the diversity of the parties. In order to find diversity jurisdiction, the plaintiff must have complete diversity of citizenship from all defendants and there must be more than $75,000 in controversy. *See* 28 U.S.C. § 1331(a). If any plaintiff and any defendant share state citizenship, complete diversity would be defeated. *Owen Equipment and Erection Co. v. Kroger,* 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978); *Grand Union Superm. of the Virgin Isl., Inc., v. H.E. Lockhart Mgmt., Inc.,* 316 F.3d 408, 410 (3d Cir.2003). Currently, Bell asserts that diversity jurisdiction exists because both requirements are met. Plaintiff does not offer an argument against diversity jurisdiction in its initial motion and declined to file a reply. Bell does not offer any evidence in support of its claims.

Bell asserts that complete diversity exists among the parties. A corporation's citizenship is determined by its place of incorporation and its principal place of business. *Hertz Corp. v. Friend,* —— U.S. ——, ——, 130 S.Ct. 1181, 1185, 175 L.Ed.2d 1029 (2010). Lewis resides in Alabama. *See Compl.* ¶ 1 (Dkt. No. 1–1). Bell states that Bell is incorporated in and has its principal place of business in Quebec, Canada; that MetLife is incorporated in and has its principal place of business in New York; and that GE is incorporated in New York and has its principal place of business in Connecticut. Plaintiff has not alleged or shown that any of the Defendants are incorporated in Alabama or have their principal place of business in there. Indeed, Plaintiff failed to reply to Bell's opposition at all. But neither has Bell shown or pointed to any evidence in the record to support its assertions. Bell did not attach a declaration, certification, or affidavit to its opposition, and the Complaint filed in this action was filed in state court and does not specify the place of incorporation or the headquarters of the parties. If there are any factual disputes, then the "party alleging jurisdiction [must] justify his allegations by a preponderance of the evidence." *Samuel–Bassett v. KIA Motors Am., Inc.,* 357 F.3d 392, 397 (3d Cir.2004). There is not necessarily a factual *dispute* here because Plaintiff has failed to reply to or contest Bell's allegations. Nevertheless, the Supreme Court has held "the court may ... insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence." *McNutt v. GMAC of Ind.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). Based on Bell's statements, complete diversity exists, and based on Plaintiff's failure to indicate otherwise, there is no apparent reason to doubt the veracity of these statements.[FN1]

> FN1. Were the Court not ultimately deciding this matter on alternate grounds, it would require Bell to refile its motion with documentation or evidence to support its claim.

**\*3** The amount in controversy requirements involves a somewhat different question because here it is the Plaintiff's burden to show that the amount in controversy is below the statutory threshold. "[I]n determining whether the amount in controversy reaches the threshold of $75,000, the court generally accepts the plaintiff's good faith allegations." *McCollum v. State Farm Ins. Co.,* 376 Fed. Appx. 217, 220 (3d Cir.2010). If the plaintiff "expressly limits her claim below the jurisdictional amount as a precise statement in the complaint ... the proponent of jurisdiction must show, to a legal certainty, that the amount in controversy *exceeds* the statutory threshold." *Frederico v. Home Depot,* 507 F.3d 188, 196 (3d Cir.2007). (emphasis in original). But where, as here, "the plaintiff has not specifically averred in the complaint that the amount in controversy is less than the jurisdictional minimum," then the Court employs the legal certainty test. *Id.* at 194–197. The legal certainty test imposes the burden on "the *challenger* to subject matter jurisdiction ... to prove, to a legal certainty, that the amount in controversy *could not exceed* the statutory threshold." *Id.* at 195 ("The rule does not require the removing defendant to prove to a legal certainty the plaintiff *can* recover $ 75,000–a substantially different standard. This reading of the legal certainty test is supported by *Meritcare, Bloom, Packard,* and *Nelson.* None of these cases require the defendant to prove the jurisdictional amount to a legal certainty in order to remain in federal court.").

Since the Plaintiff has not specifically averred an amount to avoid jurisdiction, she has failed to carry her burden on this issue. For the alleged injuries, she requests a "judgment against defendants jointly, severally, or in the alternative, for compensatory damages, punitive damages and costs of suit." *See, e.g., Compl.* at 12. Given that a human being's life and death is at issue, the Court cannot unequivocally state that Plaintiff has proved "to a legal certainty, that the amount in controversy *could not exceed* the statutory threshold." *Frederico, 507 F.3d at 195* (emphasis added). This is bolstered by the fact that Plaintiff declined to file a reply brief and respond to Bell's diversity jurisdiction arguments.

Thus, it appears likely that the Court has original jurisdiction pursuant to § 1332 although questions remain regarding the citizenship of the Defendants. Nevertheless, I need not decide whether I have subject matter jurisdiction based on diversity because it is clear that the Court has jurisdiction based on the federal officer removal statute, thus raising a federal question.[FN2]

> FN2. The Eastern District of Pennsylvania denied Plaintiff's motion to remand based on CBS invoking the federal officer removal statute. *Lewis v. Asbestos Corp., Ltd.,* Case No. 10–64625, Dkt. No. 76 at 1 n. 1 (E.D.Pa. Jul. 28, 2011).

**b. Federal Question Jurisdiction**

The Court has subject matter jurisdiction because GE's federal defense under 28 U.S.C. § 1442(a)(1) raises a federal question. FORS "directs that an action in state court brought against an officer, or person acting under that officer, of the United States or an agency thereof, for any act under color of such office may be removed to federal court." *N.J. Dep't of Envtl. Prot. v. Exxon Mobil Corp.,* 381 F.Supp.2d 398, 401 (D.N.J.2005). Removal pursuant to the federal officer removal statute is proper if a defendant can establish:

> *4 (1) it is a "person" within the meaning of the statute; (2) the plaintiff's claims are based upon the defendant's conduct "acting under" a federal office; (3) it raises a colorable federal defense; and (4) there is a causal nexus between the claims and the conduct performed under color of a federal office. *Feidt v. Owens Corning Fiberglas Corp., 153 F.3d 124, 127 (3d Cir.1998)* (internal citations omitted). These are known as the *Feidt* factors.

GE has the burden of demonstrating 1442(a)(1) jurisdiction. This is a higher burden when the defendant seeking removal is a private party; in such cases, the defendant "bear[s] a special burden of establishing the official nature of [its] activities." *Exxon Mobil* at 403 n. 5. (internal citations and quotations omitted). Private party defendants must carry this heightened burden because "the policy reasons for generally favoring removal and the existence of federal jurisdiction under section 1442 are not applicable." *Orthopedic Specialists of New Jersey PA v. Horizon Blue Cross/Blue Shield of New Jersey, 518 F.Supp.2d. 128, 133 (D.N.J.2007)* (internal citation omitted).

Plaintiff's only argument against federal question jurisdiction is made as to all Defendants and is that Defendants' private entity status deprive them of any protection afforded under 28 U.S.C. § 1442(a)(1). In particular, Plaintiff believes Defendants cannot allege that they acted pursuant to a federal officer's directions or establish a colorable federal defense. Plaintiff cites no case law specifically applicable to its argument. GE argues that it fulfills each requirement despite its private entity status.

### i. GE is a Person Under the Statute

Case law supports Defendants' status as a "person" under 1442(a)(1). Courts have consistently recognized that for the purposes of 1442(a)(1), a corporation qualifies as a person. *See Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 145, 127 S.Ct. 2301, 168 L.Ed.2d 42 (2007); *In re Methyl Tertiary Butyl Ether Products Liab. Litig.*, 488 F.3d 112, 124 (2d Cir.2007) ("[I]t is clear that [private] corporations are 'persons' within the meaning of the [1442(a)(1) ] statute."); *see also Moore v. Turner Const. Co.*, No 07–5658, 2008 WL 4723017 (D.N.J. Oct.24, 2008); *Orthopedic Specialists*, 518 F.Supp.2d at 134; *Exxon Mobil*, 381 F.Supp.2d at 403 n. 6; *Crackau v. Kucent Technologies*, 2003 WL 21665135, at *2 (D.N.J. Jun.25, 2003). Accordingly, this Court finds that Defendant GE has satisfied the first of the *Feidt* factors.

### ii. GE "Acted Under" a Federal Office

The second *Feidt* factor requires the party requesting removal to "demonstrate that it performed the *complained-of activity* at the direction of official federal authority." *Orthopedic Specialists*, 518 F.Supp.2d at 134 (emphasis in original); *New Jersey Dep't of Environmental Protection v. Dixo Company, Inc.*, No. 06–1041, 2006 WL 2716092, *3 (D.N.J.Sept.22, 2006) (limiting the court's 1442(a)(1) analysis to the complained-of activity, i.e. the disposal of hazardous waste on private property in New Jersey). Specifically, a defendant must show that the action in question was done under the direct and detailed control of a federal officer. *Id.* "[The] control requirement can be satisfied by strong government intervention." *Exxon Mobil*, 381 F.Supp.2d at 404 (internal citations omitted); *Megill v. Worthington Pump, Inc.*, No. 98–076, 1999 WL 191565 (D.Del. Mar. 26, 1999) (holding that removal is proper when the acts in question are performed "pursuant to an officer's direct orders or comprehensive and detailed regulations"). Conversely, if a private party only establishes that the act in question "occurred under the general auspices of federal direction," removal is improper. *Ryan v. Dow Chem. Co.*, 781 F.Supp. 934, 947 (E.D.N.Y.1992).

**\*5** GE has alleged sufficient facts to show that it likely acted under direct federal control for purposes of the FORS. According to GE, the Navy Sea Systems Command (NAVSEA), a federal office, "supervised, enforced and approved GE's compliance with the plans and specifications for its turbines." Hobson Aff. ¶ 6. Also, the Navy had final approval of all operating manuals, blueprints, and safety or hazard information that accompanied the equipment. Hobson Aff. ¶ 5. In that connection, the Navy dictated both the existence and the contents of any warning labels. *See* Hobson Aff. ¶ 4; Lehman Aff. ¶ 4. This shows "an unusually close ... [relationship,] involving detailed regulation, monitoring, or supervision" while producing an "item that" the government needs. *See Watson*, 551 U.S. at 153 (2007); *Hagen v. Benjamin Foster Co.*, 739 F.Supp.2d 770, 784 (E.D.Pa.2010) ("Therefore, to the extent the affidavits are true, it is clear that the Navy ... [could be] responsible for the lack of warnings.").

### iii. GE Raises a Colorable Defense

The defendant must raise a federal defense to fulfill the third *Feidt* factor. The defense need not ultimately be meritorious. Instead, the defendant must demonstrate that "a colorable claim to ... a defense has been made." *Exxon Mobil*, 381 F.Supp.2d at 403. *See also New Jersey Dep't of Environmental Protection v. Viacom, Inc.*, No. 06–1753, 2006 WL 3534364, at *3 (D.N.J. Dec.7, 2006) ("Questions regarding the merits of an asserted defense are distinct and have no connection to the question of jurisdiction."). GE points to two potential defenses stemming from official immunity pursuant to the Federal Tort Claims Act. First, is the government military contractor defense established in *Boyle v. United Technologies Corp.*, 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988). The second is the nonmilitary contractor defense as set forth in *Carley v. Wheeled Coach*, 991 F.2d 117 (3d Cir.1993). Either can satisfy this prong. *See e.g., Viacom*, 2006 WL 3534364 at *3 (finding that cursory assertions of specific federal defenses such as the government contractor defense and federal preemption defense were sufficient); *Exxon Mobil*, 381 F.Supp.2d at 403 (recognizing that a private party defendant may assert the military and nonmilitary contractor defenses for the purposes of 1442(a)(1) removal).

GE has raised a colorable government military contractor defense as established in *Boyle*. The defense has three requirements: (1) the United States must have approved reasonably precise specifications, (2) the equipment conformed to those specifications and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but unknown to the United States. *Boyle*, 487 U.S. at 512. As discussed for the "acting under" requirement, the Defendant has sufficiently alleged that the Navy exercised complete control over almost every facet of its turbines. GE alleges the Navy ordered GE to unvaryingly adhere to every requested specification. *See generally* October 17, 2003 Hobson Aff.; March 31, 2004 Hobson Aff. The second element may be established by alleging the Government's acceptance of the product at issue. *Lewis v. Babcock Indus., Inc.,* 985 F.2d 83, 87 (2d Cir.1993). The "purpose of this inquiry is to exclude from the defense those cases where the Government merely 'rubber stamps' a design." According to GE, the Navy subjected the machinery to intensive trials and only agreed to use the turbines after GE fixed all deficiencies. *See* October 17, 2003 Hobson Aff. ¶ 20; March 31, 2004 Hobson Aff. ¶ 8, ("Supervision and control were exercised through contract documents, design construction drawings, written specifications and personal oversight of GE's work."). The Navy's exacting standards combined with the acceptance of the turbines show that it believed the equipment was appropriate. For the final element, GE specifically states that there "was no information concerning any asbestos hazard or danger posed by any asbestos-containing product applied to any marine turbine on a U.S. Navy ship known by GE that was not known to the ... U.S. Navy." Betts Aff. ¶ 31, February 9, 2005. Given that GE has alleged the Navy's superior knowledge of the health risks, the third element and the federal defense requirement overall have been satisfied.

### iv. *A Casual Nexus Exists*

*6 A causal nexus is found when the complained-of action is closely related to direct federal control. *Exxon Mobil,* 381 F.Supp.2d at 404–05; *Bahrs v. Hughes Aircraft Co.,* 795 F.Supp. 965, 970 (D.Ariz.1992) (finding removal was improper where government involvement in the production of war materials was not closely related to action in dispute, waste disposal). Here, a causal nexus exists between the "conduct performed under federal direction and ... Plaintiff's failure to warn claim." *Hagen,* 739 F.Supp. at 785. *Hagen* presented an almost identical factual scenario of an ex-Naval employee suing for asbestos exposure aboard a naval vessel. The court found a casual nexus because the defendant alleged "the Navy was responsible for the lack of warnings." *Id.* at 784. Here too, GE has alleged that the Navy asserted complete control over the warning labels' existence and contents. *See* October 6, 2004 Hobson Aff. ¶ 4; October 6, 2004 Lehman Aff. ¶ 4. GE has argued that any "failure to warn relates to the Navy's extensive supervision and control over the ... [turbines] Defendant manufactured." *Bouchard v. CBS Corp.,* MDL–875, 2012 WL 1344388 (E.D.Pa. Apr.17, 2012). Accordingly, "the necessary causal connection exists." *See id.*

GE has established all required *Feidt* elements and thus established federal question jurisdiction. Therefore, the Court has jurisdiction over the entire case. Removal based on § 1442 does not require unanimity of all defendants and applies to the entire matter, even if only one defendant can claim status as a federal officer. "Since the federal officer is the only one entitled to remove under § 1442, he alone can remove without other defendants joining in the petition, and the entire case is removed to federal court." *Ely Valley Mines, Inc. v. Hartford Accident & Indem. Co .,* 644 F.2d 1310, 1315 (9th Cir.1981); *see also Durham v. Lockheed Martin Corp.,* 445 F.3d 1247, 1253 (9th Cir.2006); *Akin v. Ashland Chem. Co.,* 156 F.3d 1030, 1034 (10th Cir.1998); *Doe v. Kerwood,* 969 F.2d 165, 168 (5th Cir.1992); *Ely Valley Mines, Inc. v. Hartford Accident and Indem. Co.,* 644 F.2d 1310, 1314–15 (9th Cir.1981); *Bradford v. Harding,* 284 F.2d 307, 310 (2d Cir.1960); *Huntingdon Valley Club Condo. Ass'n v. Pa. Hous. Fin. Agency,* No. 04–4770, 2005 U.S. Dist. LEXIS 234, *6, 2005 WL 44524 (E.D.Pa. Jan. 10, 2005) ("Although the Third Circuit has not addressed the issue, every court of appeals to have considered the issue has decided that a federal officer or agency may unilaterally remove an entire case to federal court under § 1442, regardless of whether other defendants join in the removal notice.").

### c. Supplemental Jurisdiction

Plaintiff asks the Court not to exercise supplemental jurisdiction over any remaining state law claims. Pursuant to 28

U.S.C. 1367(c), the court can decline to exercise jurisdiction over the suit if a litigant raises a "novel or complex issue of State law" (28 U.S.C. § 1367(c)(1)), the state law claims "substantially predominate" the federal claims (28 U.S.C. § 1367(c)(2)), the court has "dismissed all claims over which it has original jurisdiction", (28 U.S.C. § 1367(c)(3)) or "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4). Supplemental jurisdiction is appropriately exercised when the federal and state law claims "derive from a common nucleus of operative fact" or are of such nature that the plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *See also City of Chicago v. Int'l Coll. of Surgeons,* 522 U.S. 156, 173, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997) ( "Federal court should consider and weigh ... the values of judicial economy, convenience, fairness, and comity when deciding whether to exercise supplemental jurisdiction.") (internal quotations omitted). Plaintiff first argues that remand is required pursuant to 28 U.S.C. § 1447(c), which states "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." As found above, the court has subject matter jurisdiction and rejects this argument. Plaintiff does not address the scenario of concurrently present federal and state law claims.

*7 Moreover, the claims arise under a common nucleus of operative fact. The Third Circuit has stated that "[i]n trying to set out standards for supplemental jurisdiction and to apply them consistently, we observe that, like unhappy families, no two cases of supplemental jurisdiction are exactly alike." *Nanavati v. Burdette Tomlin Memorial Hosp.,* 857 F.2d 96, 105 (3d Cir.1988). Plaintiff alleges injuries under state law because of asbestos exposure from, among other sources, GE's turbines. GE directly asserts a federal defense in response to Lewis' state law claims. If successful, this would legally relieve it from any responsibility arising from asbestos exposure to its products. Since "the same act" relates to "parallel federal and state laws, the common nucleus of operative facts is obvious." *Lyon v. Whisman,* 45 F.3d 758, 761 (3d Cir.1995).

Nor do the state law claims dominate over the federal question. The Third Circuit has said predomination occurs when "a state claim constitutes the real body of a case, to which the federal claim is only an appendage. [Essentially,] only where permitting litigation of all claims in the district court can accurately be described as allowing a federal tail to wag what is in substance a state dog." *Borough of W. Mifflin v. Lancaster,* 45 F.3d 780, 789 (3d Cir.1995) (internal citations and quotations omitted).[FN3] Given the close relationship between the FORS defense and the failure to warn claims, the federal defense and state claims are factually and logically intertwined. Nor does Plaintiff allege any exceptional circumstances that invoke concerns of judicial economy, convenience, fairness, or comity. Therefore, the court will retain jurisdiction over all claims.

> FN3. Plaintiff relies on *Moore v. Debiase,* 766 F.Supp. 1311 (D.N.J.1991) as an example of a court remanding an independent federal law claim with state law claims. The Third Circuit in *Lancaster* court specifically rejected *Moore* and stated that a court cannot decline to exercise jurisdiction over an independent federal law claim pursuant to 28 U.S.C. § 1441. "The district court's discretion to remand under § 1441(c) can pertain only to those *state law claims* which the district court could decline to hear under 28 U.S.C. § 1367."*Lancaster,* 45 F.3d at 787 (emphasis in original).

## III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand is denied. An order will be entered consistent with this Opinion.

D.N.J.,2012.
Lewis v. Asbestos Corp., Ltd.
Not Reported in F.Supp.2d, 2012 WL 3240941 (D.N.J.)

http://web2.westlaw.com/print/printstream.aspx?rs=WLW13.07&desti...

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

10/11/2013 11:48 AM