UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARY SUE PAPP, ET AL.,<br><br>*Plaintiffs*,<br>v.<br><br>FORE-KAST SALES CO., INC., ET AL.,<br><br>*Defendants*. | Civil Action No. 13-cv-05940 (PGS)(DEA)<br><br>**MEMORANDUM AND ORDER** |

SHERIDAN, U.S.D.J.

This matter comes before the Court upon Plaintiffs Mary Sue ("Papp") and Steven Papp's (collectively "Plaintiffs") Motion to Remand ("Pl. Br.") (DE 4) this action to the Superior Court of New Jersey, Law Division, County of Middlesex. For the reasons set forth below, Plaintiffs' Motion to Remand is GRANTED.

BACKGROUND

Plaintiffs brought this personal injury action in the Superior Court of New Jersey, Law Division, County of Middlesex, against Defendants Fore-Kast Sales Company ("Forekast"); Honeywell International, Inc., f/k/a Allied Signal, Inc., as successor-in-interest to The Bendix Corporation ("Honeywell"); New Brunswick Plating Co., f/k/a New Brunswick Nickel and Chrome Plating ("New Brunswick Plating"); Union Carbide Corporation ("Union Carbide"); John Doe Corporations 1-50; and John Doe Corporations 51-100 on August 12, 2013. *See* Plaintiffs' August 12, 2013 Complaint ("Complaint"). On August 16, 2013, Plaintiffs filed a First Amended Complaint in the same state court action, in which they named three additional entity defendants: Goodrich Corp., f/k/a B.F. Goodrich Co. ("Goodrich"); The Goodyear Tire and Rubber Co. ("Goodyear"); and The Boeing Company, individually and as a successor by

merger to the McDonnell Douglas Corporation ("Boeing").  *See* Plaintiffs' First Amended Complaint ("Amended Complaint" or "Am. Compl.").

In the Amended Complaint, Papp alleges injury sustained as a result of take-home and bystander exposure to asbestos from her husband, Robert Keck ("Keck"), whose employment throughout the relevant period exposed him to asbestos dust.  (Am. Compl. at ¶¶ 2-3.)  Papp claims to have been exposed to asbestos dust brought home on Keck's clothing and person, and to have been further exposed while laundering such clothing.  (Am. Compl. at ¶ 4.)  Finally, Papp alleges that she was exposed to asbestos dust on Keck's clothing and person, and while laundering such clothing that had been generated during automotive repair work performed by Keck at Papp's residence.  (Am. Compl. at ¶ 5.)  As a result of such exposure, Papp contracted mesothelioma, which has resulted in various injuries and attendant complications.  (Am. Compl. at ¶ 6.)

Boeing removed the matter to this court pursuant to a statute commonly known as the federal officer removal statute. 28 U.S.C. § 1442(a)(1).[1]  Boeing alleges that its production and manufacturing processes with respect to the C-47 aircraft were performed at the behest, and under the control, of the federal government, and that these activities resulted in the inclusion in the finalized C-47 of asbestos-containing components, which would ultimately be transferred years later to Keck's employers, and serve as the source of Keck's and Papp's exposure.

---

[1] Section 1442 represents an exception to the general rule that removal of an action is governed by the claims asserted in the plaintiff's well-pleaded complaint, "because issues generally thought to be defensive in character, rather than the content of the plaintiff's claim, provide its raison d'etre." 14C Wright, Miller, & Cooper Federal Practice and Procedure: Jurisdiction § 3726 (4th ed. 2008).  Thus, a defendant that is able to satisfy the requirements for removal pursuant to § 1442(a)(1) "gain[s] access to federal court [even] where no federal question is presented by the plaintiff." *N.J. Dep't Envtl. Prot. v. Exxon Mobil Corp.*, 381 F. Supp. 2d 398, 401 n.3 (D.N.J. 2005) (citation omitted).

Plaintiffs move to remand on two grounds: (1) Boeing's removal pursuant to Section 1442(a)(1) suffers from a procedural defect in that it was untimely pursuant to 28 U.S.C. § 1446[2]; and (2) even were Boeing's notice of removal to be deemed timely, Boeing cannot satisfy the statutory requirements for federal officer removal pursuant to Section 1442(a)(1).

## DISCUSSION

### I.  Federal Officer Removal Jurisdiction

#### A.  Legal Standard

"[T]he general rule that federal courts have an ever present obligation to satisfy themselves of their subject matter jurisdiction . . . applies equally in removal cases." *Liberty Mut. Ins. Co. v. Ward Trucking Corp.*, 48 F.3d 742, 750 (3d Cir. 1995); *see also* FED R. CIV. P. 12(h).  The parties' motion papers have presented a significant question as to whether, under the circumstances of this matter, the federal officer removal statute, 28 U.S.C. § 1442(a)(1) provides a proper basis for this Court's jurisdiction over Plaintiffs' claims.  Therefore, the Court will closely examine and construe the Amended Complaint in determining whether Boeing's removal petition properly establishes the existence of federal jurisdiction.  *See Feidt v. Owens Corning Fiberglas Corp.*, 153 F.3d 124, 128 (3d Cir. 1998) (noting that "[t]he district court's authority, indeed obligation, to determine whether a removal petition properly invokes its removal jurisdiction necessarily includes the authority to construe the complaint upon which the court makes its determination."); *Orthopedic Specialists of N.J. PA v. Horizon Blue Cross/Blue Shield of N.J.*, 518 F. Supp. 2d 128, 137 (D.N.J. 2007).

---

[2] Because the Court has determined that Boeing has failed to carry its burden of demonstrating the propriety of removal pursuant section 1442(a)(1) under the test announced by the Third Circuit in *Feidt v. Owens Corning Fiberglas Corp.*, 153 F.3d 124, 128 (3d Cir. 1998), there is no need to address the timeliness issue raised by Plaintiffs in their Motion to Remand.  (*See* Pl. Br. at 11-13.)

Boeing contends that the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1442(a)(1), the federal officer removal statute. Section 1442(a)(1) provides in relevant part that:

> A civil action . . . commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending: (1) The United States or any agency thereof of any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office . . . .

28 U.S.C. § 1442(a)(1). "The federal officer removal statute is designed to protect officers of the federal government, who[,] when acting pursuant to authority granted them under federal law, run afoul of the laws of the state." *Orthopedic Specialists*, 518 F. Supp. 2d at 133 (citation omitted). In order for the Court to exercise "removal jurisdiction under section 1442(a)(1), a defendant . . . must establish that (1) it is a 'person' within the meaning of the statute; (2) the plaintiff's claims are based upon the defendant's conduct 'acting under' a federal office; (3) it raises a colorable federal defense; and (4) there is a causal nexus between the claims and the conduct performed under color of a federal office." *Feidt*, 153 F.3d at 127 (citing *Mesa v. California*, 489 U.S. 121, 129, 109 S. Ct. 959, 103 L. Ed. 2d 99 (1989)).

It is the removing defendant's burden to demonstrate both the propriety of removal and the existence of federal jurisdiction over the matter under section 1442(a)(1). *See N.J. Dept. of Envtl. Prot. v. Dixo Co., Inc.*, Civ. No. 06-1041, 2006 WL 2716092, *2 (D.N.J. Sept. 22, 2006) (citing *Feidt*, 153 F.3d at 127). Moreover, where, as here, a private actor seeks to assert the right of federal officer removal under section 1442(a)(1), the party "'bear[s] a special burden of establishing the official nature of [its] activities." *See id*. (quoting *Exxon Mobil*, 381 F. Supp. 2d at 403 n.5). Assessing such a "special burden" is appropriate, as "the policy reasons for generally favoring removal and the existence of federal jurisdiction under section 1442 are not

applicable" to private parties. *Exxon Mobil*, 381 F. Supp. 2d at 403 n.5 (quoting *Freiberg v. Swinerton & Walberg Prop. Svcs., Inc.*, 245 F. Supp. 2d 1144, 1150 (D. Colo. 2002)).

As noted above, *Feidt* set forth a four-prong test that must be met before a district court may exercise subject matter jurisdiction under section 1442(a)(1). The Court will briefly address the first prong, *i.e.*, whether Boeing is a "person" within the meaning of section 1442(a)(1), and will also consider whether Boeing has carried its burden under the second prong of the *Feidt* test of demonstrating that it had acted under color of a federal office. Because the Court's determination with respect to the second prong is dispositive of Plaintiffs' Motion to Remand, there is no need for the Court to conduct an analysis with respect to the third and fourth prongs of the *Feidt* test.[3]

### B. Application of the *Feidt* Test

#### i. Boeing's Status as a "Person" Within the Meaning of the Statute

Plaintiffs do not appear to contest Boeing's status as a "person" for the purposes of application of section 1442(a)(1). "Most courts have held that a corporation . . . qualifies as a person" for federal officer removal purposes. *Exxon Mobil*, 381 F. Supp. 2d at 403 n.6 (citing

---

[3] In *Exxon Mobil*, the court observed that "many courts combine the second and fourth components [of the *Feidt*] test into one analysis" and chose to do the same. *Exxon Mobil*, 381 F. Supp. 2d at 403 n.7. *See also N.J. Dept. of Envtl. Prot. v. Viacom, Inc.*, Civ. No. 06-1753, 2006 WL 3534364, *3 (D.N.J. Dec. 7, 2006); *Arnold v. Blue Cross & Blue Shield of Tex., Inc.*, 973 F. Supp. 726, 740 (S.D. Tex. 1997). However, in this case, the Court's determination that Boeing has failed to demonstrate that it was "acting under" a federal office when it engaged in the challenged conduct which served as the basis of Plaintiffs' claim, obviates the need for the Court to undertake an analysis under the remaining *Feidt* prongs. If the Court were, however, to reach the "causal nexus" analysis called for by the fourth prong, the Court would likely conclude that Boeing has failed to establish the requisite nexus between Plaintiffs' claim and the conduct that allegedly took place under color of a federal office. This conclusion would be based on similar grounds for the Court's determination that Boeing had failed to carry its burden under the second prong of the *Feidt* test, that is, there is no nexus between the production and design arrangements between Boeing and the military, and Boeing's subsequent failure to warn.

*Crackau v. Lucent Techs.*, No. Civ. 03-1376, 2003 WL 21665135, *2 (D.N.J. June 25, 2003); *Arness v. Boeing N. Am., Inc.*, 997 F. Supp. 1268, 1271-72 (C.D. Cal. 1998)); *see also Thompson v. Cmty. Ins. Co.*, No. C-3-98-323, 1999 U.S. Dist. LEXIS 21725 (S.D. Ohio 1999) ("the overwhelming weight of recent judicial authority supports the view that corporations qualify as 'persons' under the federal officer statute"). Accordingly, and as in *Exxon Mobil*, the Court will not conduct a searching inquiry with respect to this prong of the *Feidt* test, and will instead assume that Boeing is a "person" for the purposes of § 1442(a)(1). *See Exxon Mobil*, 381 F. Supp. 2d at 403 n.6.

### ii.     Whether Boeing "Acted Under" a Federal Agency Officer

Satisfaction of the second prong of the *Feidt* test turns on the level of control exercised by the federal officer or agency over the challenged conduct in question. *Orthopedic Specialists*, 518 F. Supp. 2d at 134. Thus, the Court must analyze whether Plaintiffs' "claims are based upon [Boeing's] conduct 'acting under' a federal office." *Feidt*, 153 F.3d at 127. In order to carry its burden, the removing private party "must demonstrate that it performed *the complained-of activity* at the direction of official federal authority." *Dixo Co.*, 2006 WL 2716092 at *2 (emphasis in original) (citations omitted). In addition, "courts generally require that the private actor defendant demonstrate that the federal officer had direct and detailed control over the litigated activity." *Id.* (quotations and citations omitted); *see also Lewis v. Asbestos Corp., Ltd.*, Civ. No. 10-650, 2012 WL 3240941, *4 (D.N.J. Aug. 7, 2012). The standard to be applied in reaching this determination has also been articulated as follows:

> Removal must be predicated upon a showing that the acts forming the basis of the state suit were performed pursuant to an officer's direct orders or comprehensive and detailed regulations. By contrast, if the corporation establishes only that the relevant acts occurred under the general auspices of federal direction then it is not entitled to [section] 1442(a)(1) removal.

*Good v. Armstrong World Indus., Inc.*, 914 F. Supp. 1125, 1128 (E.D. Pa. 1996).

"Close analysis of the [Plaintiffs'] claim is critical because the Court must determine the specific act upon which [Plaintiffs'] claim is based, and the level of control an agency or officer may have exercised over that act." *Orthopedic Specialists*, 518 F. Supp. 2d at 137. Boeing contends that removal to federal court was proper on the ground that it had acted "pursuant to military procurement contracts with the federal Armed Forces . . . and in compliance with the military's reasonably precise design specifications and detailed design drawing, all of which were pre-reviewed and pre-approved by the military through designated federal officers." (*See* Def. Br. (ECF 14) at 6, Exhibit A, Declaration of Larry L. Fogg ("Fogg Decl.") at ¶¶ 4-34.) Boeing further argues that its actions were taken under the control of a federal agency or officer because the military, and not Boeing, was exclusively responsible for the procurement of the asbestos-containing components (government furnished aircraft equipment, or "GFAE") on which Keck ultimately worked, which were then provided to Boeing for subsequent installation on the aircraft pursuant to its military contracts. (Fogg Decl. at ¶¶ 15, 17-19.) According to Boeing, the military, too, exercised "exclusive dominion and control" over the designs and specifications of the GFAE components, as well as the extent to which any warnings were affixed to the same or set forth in the contents of GFAE manuals. (*Id*. at ¶¶ 28-33.) Moreover, Boeing was also required to comply with numerous self-authored military specifications ("MIL specs"), as well as the Air-Force-Navy Aeronautical Standards in performing under the contract, which controlled the design and construction of aircraft components, as well as the provision and contents of any warnings. (*Id*. at ¶¶ 20-22, 25-27.) Finally, Boeing contends that the military has sole control over all technical manuals, labels, and warnings produced in conjunction with the C-47, and that Boeing was therefore precluded from amending or expanding the contents

7

thereof, or otherwise placing additional labels, markings, or warnings on any military aircraft or components beyond those required by the MIL specs. (*Id*. at ¶¶ 14, 28-33.) The Court disagrees with Boeing's characterization of the complained-of conduct, namely its failure to warn of the hazards or potential adverse health effects associated with asbestos-containing products, as having been taken under the direct control of a federal agency or officer.

Consistent with the obligation to determine whether Boeing's removal properly invoked the Court's jurisdiction under section 1442(a)(1), *Feidt*, 153 F.3d at 127, the Court has closely parsed the language of the Amended Complaint in order to ascertain the nature of the claims asserted against Boeing. The Court construes such claims as predicated solely on a failure to warn of the dangers of contact with asbestos-containing aircraft components. The same conclusion was reached by the district court in *Feidt*, which is directly on point to the extent of the similarity of the claims asserted by the plaintiffs in that matter. There, the district court held that

> [a] fair reading of the Complaint and the activities of Westinghouse alleged on the record generated before this Court demonstrates that *plaintiffs' claims against Westinghouse are predicated solely upon the defendant's failure to warn persons such as the plaintiff* . . . of the dangers of contact with asbestos-laden thermal insulation used with the turbines which Westinghouse manufactured. *While different claims on different bases are asserted against other defendants*, *this is the sole potentially viable claim against Westinghouse*.

*Id*. (citation omitted) (emphasis in original). Accordingly, while Plaintiffs have stated claims against other defendants under different theories of liability, the Court's reading of the Amended Complaint leads it to conclude that the claims asserted against Boeing are based solely on Boeing's failure to warn. Therefore, the analysis of whether the requirements for federal officer

8

removal have been met must be undertaken solely within the context of Plaintiffs' failure to warn claims against Boeing.[4]

Moreover, the Court's own close review of the myriad voluminous documents appended to Boeing's opposition brief, and which were relied upon by Fogg in his declaration, counsels the same conclusion. Although, to be sure, Defendants have succeeded in demonstrating that the military tightly controlled both the design and manufacture of the C-47 and its constituent components through the various guidelines and official specifications proffered by Boeing,[5] not one of these documents indicates that a federal officer or agency directly prohibited Boeing from issuing, or otherwise providing, warnings as to the risks associated with exposure to asbestos contained in products on which third-parties, such as Keck, worked or otherwise provided services. Although Fogg appears to reference many of these documents in support of Boeing's position that the military exercised sole dominion and control over the design and manufacture of the C-47, he cites to no such document in many of the paragraphs in which he explicitly disclaims any authority or discretion on the part of Boeing to issue warnings. (Fogg Decl. at ¶¶

---

[4] Importantly, the Court, in construing Plaintiffs' Amended Complaint, further takes notice of the express disclaimer of federal jurisdiction therein contained. (Am. Compl. at 13.) The disclaimer explicitly provides that, because Plaintiffs' claims are based on a theory of failure to warn, and there being no evidence that the government itself or one of its military branches specifically instructed Boeing not to warn about health hazards associated with exposure to asbestos, there can be no valid invocation of federal officer removal jurisdiction. In addition to the allegations contained in the other counts of the Amended Complaint, the Court was obligated to consider the disclaimer of federal jurisdiction in fulfilling its obligation to construe the Amended Complaint in order to determine the existence or absence of federal jurisdiction. *See Feidt*, 153 F.3d at 127.

[5] Although the Court notes that, in the very Detail Specifications relied upon by Boing in support of its contention that it had no authority or discretion to deviate from the directives of the military with respect to the design and manufacture of GFAE components, there appears a provision in each such document whereby Boeing "reserve[d] the right to substitute equivalent items for those listed . . . , when such substitution [was] necessary to prevent delay in delivery," the overwhelming weight of the evidence confirms the military's sole dominion and control over these aspects of the manufacture of the C-47. (*See* Def. Br., Exhibit 4 at p. 207, ¶ 12(B), Exhibit 25 at p. 454, ¶ 12(B), Exhibit 26 at p. 594, ¶ 12(B).)

28, 31-33.)  Furthermore, what few documents Fogg does reference in the remaining paragraphs of the declaration devoted to the issue of warnings either miss the mark, or otherwise do not contain any explicit directive by the military that Boeing was not to provide any warnings to third parties in the position of either Keck or Papp.  Indeed, the Military Specification MIL-H-5473A, entitled "Handbooks; Maintenance Instructions (Aircraft), to which Fogg points is intended, by its own terms, for review and use by those performing regular service and maintenance on the aircraft and its components.  (Def. Br., Exhibit 37 at p. 1005.)  As such, persons similarly situated to Keck or Papp were clearly not the intended recipients of such a publication, and therefore it is of little or no relevance to Boeing's stated position.  Nor do the excerpts from "Technical Manual T.O. 1-1-4" appear to cure this deficiency.  (Def. Br., Exhibit 36 at 995-1003.)  Nowhere in that document is there a specific or explicit instruction by the military that Boeing is precluded from issuing its own warnings.

　　　　Therefore, Boeing has failed to carry its burden of establishing, pursuant to *Feidt*, that it was "acting under" the control of a federal agency or officer in failing to warn as to the attendant health risks to individuals such as Keck and Papp of exposure to asbestos contained in components used in the manufacture of the C-47.  Therefore, the Court lacks subject matter jurisdiction, and dismissal of the action is required.  An analysis of the remaining prongs of the *Feidt* test not being warranted, Plaintiffs' Motion to Remand this matter to the Superior Court of New Jersey, County of Middlesex is granted.

## ORDER

Therefore, IT IS on this 9th day of October, 2014;

**ORDERED** that Plaintiffs' Motion to Remand the instant action to the Superior Court of New Jersey, County of Middlesex (ECF No. 4), is GRANTED.  The matter is hereby remanded to the Superior Court of New Jersey, Law Division, County of Middlesex.

The Clerk of the Court is hereby directed to close the case and terminate the action.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.